702 P.2d 670

**STATE of Arizona, Appellee,**

v.

**Ramon
MARTINEZ–VILLAREAL, Appellant.**

No. 5963.

Supreme Court of Arizona,
En Banc.

July 10, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Diane M. Ramsey, Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

William I. Rothstein, Nogales, for appellant.

HOLOHAN, Chief Justice.

Appellant, Ramon Martinez-Villareal, was tried and convicted of two counts of first degree murder and one count of first degree burglary. He was sentenced to a term of 10 years for the burglary and to death for the double homicides. Further, appellant pled guilty to a third degree burglary and was sentenced to a term of two and one-half years to be served concurrently with the other sentences. This court has jurisdiction of the appeal pursuant to A.R.S. §§ 13–4031, –4035.

On appeal, appellant raises the following issues:

(1) Whether the trial court properly consolidated a count of burglary with the murder charges three weeks prior to trial.

(2) Whether the trial court properly refused appellant's requested jury instruction on the lesser-included offense of second degree murder.

(3) Whether the trial court erred in admitting evidence of an undisclosed prior bad act.

(4) Whether the trial court erred in admitting a Mexican police officer's testimony when his written reports had not been disclosed to the defense.

(5) Whether the death penalty was properly imposed:

(a) Were jurors systematically excluded because of their opposition to the death penalty?

(b) Did the trial court satisfy the requirements of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), by determining, beyond a reasonable doubt, that appellant "killed, attempted to kill, or intended to kill?"

(c) Did the trial court err in not finding lack of intent to kill as a mitigating circumstance?

(d) Did the trial court properly determine that the homicides were "depraved" within the meaning of A.R.S. § 13–703?

(e) Did the trial court consider mitigating circumstances pursuant to A.R.S. § 13–703(G)?

## FACTS

Over the weekend of October 8–10, 1982, the Bailey residence in Tumacacori, Arizona was burglarized. Among the missing items were several high caliber rifles, ammunition, clothing, towels, and custom jewelry. No suspects were apprehended.

On October 14, 1982, Jim McGrew and his ranch hand, Fernando Estrada, were discovered shot to death in a remote area of the Salero Ranch in Santa Cruz County. Sheriff's investigators at the murder scene discovered two distinctive sets of footprints, appellant's fingerprints on the rearview mirror of the ranch truck belonging to McGrew, and ammunition and personal effects later determined to have been taken from the Bailey residence. The autopsy revealed that the victims had died of gunshot wounds to the chest. There were no suspects developed in the initial stages of the murder investigation.

Approximately one month after the murders, while investigating a burglary which had occurred at the Aycock residence, the investigators found the same two distinctive sets of footprints discovered at the murder scene.

On November 24, 1982, Sheriff's Deputies tracked footprints identical to those found at the murder scene and at the Aycock burglary. They followed the footprints to Tubac, Arizona, where they found appellant, and a companion, David Meza-Monreal, hiding. Appellant was wearing boots which made the distinctive tracks. He also had in his possession items taken from the Bailey burglary. The two were arrested and advised several times, in Spanish, of their *Miranda* rights, which they acknowledged understanding. Appellant was transported to the Santa Cruz County Sheriff's Office, booked, and readvised of his rights. He agreed to answer the officers' questions. Officers asked him if he had been at the Salero Ranch approximately one month prior and if a murder had been committed. Appellant denied knowledge of a murder. When told that his footprints were found at the murder scene, appellant admitted being present at the scene, but claimed he did not kill or shoot anyone. He characterized his involvement as an unwilling participant. Appellant implicated two companions he claimed to have been traveling with, Mario Gomez-Jiminez and David Meza-Monreal. Appellant told police that sometime after the Bailey residence was burglarized, the group came across McGrew and Estrada working on the Salero Ranch. When McGrew and Estrada left, appellant and the others waited overnight for McGrew and Estrada to return to work the following day to take their money and truck. When McGrew and Estrada returned, appellant stated that he acted only as lookout. He further maintained that the murders occurred when one of his companions went berserk during the robbery. His only role, he claimed, was being forced to drive McGrew's pick-up truck.

When police questioned David Meza-Monreal about the murders, he told Sheriff's Deputies that all he knew was what appellant had told him while they were traveling from Nogales to Durango, Mexico. He maintained that the appellant related to him the story of the killings on the Salero Ranch during their travels. Appellant told Meza-Monreal that he and a boy had killed an American and a Mexican. Meza-Monreal testified that appellant told him that he killed "because of his pure balls, that he was very macho." The officers verified that Meza-Monreal had met appellant approximately two weeks before they were apprehended together while Meza-Monreal was working at the Nogales train station. Meza-Monreal had apparently seen appellant sell a camera and equipment to the Terminal Chief for Train Operations. Based on information provided by Meza-Monreal, property stolen from the Bailey and Aycock burglaries was recovered in Mexico.

On December 10, 1982 Sheriff's Deputies traveled to Hermosillo, Mexico and photographed several high caliber rifles that the authorities had confiscated from appellant and one Mario Gomez-Jiminez. Appellant had been arrested on October 19, 1982 in

Empalme, Mexico for possession of the weapons but was later released. These weapons matched the rifles stolen from the Bailey residence, and they were identified at trial as the murder weapons.

### 1. *Consolidation of Burglary Count*

Appellant contends it was reversible error for the trial court to grant the prosecution's motion to consolidate the Bailey burglary charge and the murder counts three weeks prior to trial. Appellee asserts that appellant waived the consolidation issue for purposes of appeal because a motion for severance was not made during trial or before the close of the evidence. In the absence of waiver, the State urges that consolidation was proper because the offenses were part of a "continuing series of events," and evidence of the burglary charge would have been admissible at the murder trial "to complete the picture" even if severance had been granted.

Rule 13.3 of the Arizona Rules of Criminal Procedure, 17 A.R.S. governs joinder and consolidation of criminal offenses. Rule 13.3(a) requires that offenses be related before they can be consolidated or joined. Accordingly, offenses can be joined or consolidated only if they:

(1) Are of the same or similar character; or

(2) Are based on the same conduct or are otherwise connected together in their commission; or

(3) Are alleged to have been a part of a common scheme or plan.

*Id.* Provided the offenses fit into one or more of these categories, Rule 13.3(c) permits consolidation "in whole or in part by the court or upon motion of either party, provided that the ends of justice will not be defeated thereby." *Id.*

The state argued in the trial court that the burglary and murder counts should be consolidated because the same evidence that would be brought out at the murder trial would also be presented at the burglary trial. Appellant opposed consolidation before the trial court on the grounds that the jury might be confused by the consolidated burglary and murder counts where much of the evidence would overlap, and that consolidation only three weeks prior to the scheduled murder trial did not provide adequate time for the preparation of a meaningful defense. Appellant did not attempt to refute the State's characterization of the relationship between the two crimes. Contrary to appellant's representation that "late" consolidation left counsel only three weeks to prepare a defense to the burglary charge, the facts indicate that as early as January 24, 1983 the prosecutor had represented on the record that the burglary and murder counts probably would be consolidated.[1]

Generally, joinder of offenses is permitted when they are "based on the same conduct or are otherwise connected together in their commission[.]" Rule 13.3(a)(2), Arizona Rules of Criminal Procedure, 17 A.R.S. The state's case on the murder charges involved presenting evidence which identified the murder weapons and connect-

---

1. On January 24, 1983 the following exchange took place between Superior Court Judge Montiel, Deputy County Attorney Stirling, and William Rothstein, appellant's counsel:

MR. ROTHSTEIN: ... My client is charged with this particular burglary. He's charged with another burglary, the PH is going to be Wednesday. He's going to be arraigned today on two counts of first-degree murder. *There's a possibility, although it has not been firmed up, that the entire thing may be packaged together.* I can't tell the Court that's the case, but I would like to have this left open to investigate that possibility.

THE COURT: *Are these cases going to be consolidated?*

MR. STIRLING: *They are,* your Honor. That's—

MR. ROTHSTEIN: There's a question.

THE COURT: You anticipate that, Mr. Stirling?

MR. STIRLING: I do, your Honor.

(R.T., January 24, 1983, at 2 (emphasis added)).

This is not to approve of Prosecutor Stirling's practice in this case of delaying consolidation because he didn't "get around to it." (R.T., March 28, 1983, at 4). The preferred practice, of course, would have been to formalize the consolidation discussed on January 24, 1983, as shortly thereafter as possible.

ing those weapons as having been in the possession and control of the appellant during the period relevant to the murders. The evidence of the burglary of the Bailey residence was so connected with the murder case that it would have necessarily been admitted even if the burglary had not been charged as a separate count. *See State v. Villavicencio*, 95 Ariz. 199, 201, 388 P.2d 245, 246–47 (1964).

We have in other cases permitted the joinder of different crimes in a single trial where the offenses arose out of a series of connected acts, and the offenses were provable by much the same evidence. *See State v. Gretzler*, 126 Ariz. 60, 73, 612 P.2d 1023, 1036 (1980); *State v. Via, Jr.*, 146 Ariz. 108, 114–116, 704 P.2d 238, 244–246 (1985).

The federal rule on joinder (Rule 8(a), Federal Rules of Crim.Proc.), which is similar to our Rule 13.3(a), has been held to permit joinder of offenses where "the offenses arose out of a series of connected acts, and the evidence as to each count, of necessity, overlaps." *James v. United States*, 416 F.2d 467, 474 (5th Cir.1969), *cert. denied* 397 U.S. 907, 90 S.Ct. 902, 25 L.Ed.2d 87, *cert. denied* 397 U.S. 928, 90 S.Ct. 938, 25 L.Ed.2d 108 (1970). Joinder has been approved under the rule where most of the evidence admissible in proof of the one offense was also admissible in proof of the other. *United States v. Barney*, 568 F.2d 134, 135 (9th Cir.), *cert. denied* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). Finally, joinder under the rule was permitted where there were common elements of proof in the joined offenses. *United States v. Wilson*, 715 F.2d 1164 (7th Cir.), *cert. denied* — U.S. ——, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983), *cert. denied* — U.S. ——, 104 S.Ct. 727, 79 L.Ed.2d 187 (1984).

Cases from other jurisdictions are collected in an Annotation in 59 A.L.R.2d 841 (1958). A later case from Massachusetts permitted the joinder of car theft with attempted murder. The evidence of the car theft was used to help fix the date of the attempted murder and the identity of the

defendant as the perpetrator. The Massachusetts court held that there was no abuse of discretion in the joinder of the dissimilar offenses where proof of guilt is made by substantially the same evidence. *Commonwealth v. Jervis*, 368 Mass. 638, 646, 335 N.E.2d 356, 361 (1975).

■ The Bailey burglary evidence is entwined with that of the homicides. The murder weapons came from the Bailey burglary. Other property from the burglary was found at the scene of the murders and in the stolen ranch vehicle. The defendant had some of the Bailey property with him when he was arrested. The murder weapons were traced to Mexico, where the evidence shows that it was the defendant who had possession of the weapons. The evidence of the Bailey burglary eliminated the owners of the property as suspects in the homicides and served to identify the defendant as the possessor of the murder weapons at a time close to that of the murders. The evidence also corroborated parts of the defendant's statement given to the deputies investigating the case. The evidence in this case tying the appellant to the crimes was so connected and related that it was proper for the two offenses to be joined and tried together.

■ The joinder did not, as suggested by appellant, confuse the issues. The jury was properly instructed to consider each offense separately, and they were advised that the state had to prove an offense beyond a reasonable doubt before a conviction could occur. We find no prejudice in the joinder of the offenses.

2. *Failure to Instruct on Defendant's Theory of the Case*

■ Appellant contends that the trial court erred in failing to instruct the jury on second degree murder. The case was submitted to the jury solely on a felony-murder theory. This court has repeatedly rejected the propriety of a second degree murder instruction where a murder charge is submitted to the jury on a felony-murder theory. *See, e.g., State v. Arias*, 131 Ariz.

441, 443–44, 641 P.2d 1285, 1287–88 (1982); *State v. Greenawalt*, 128 Ariz. 150, 168, 624 P.2d 828, 846, *cert. denied* 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981).

When a case is submitted to the jury solely on a felony-murder theory, the jury may not be instructed on a lesser degree of murder where the evidence indicates it was committed in the perpetration or attempted perpetration of any of the activities enumerated in the first degree murder statute....

*Greenawalt*, 128 Ariz. at 168, 624 P.2d at 846. The evidence in this case supports only a first degree murder instruction because the murders were committed in the course of a robbery. *See State v. Valencia*, 121 Ariz. 191, 198, 589 P.2d 434, 441 (1979). Either appellant was guilty of killing the victims in the course of a robbery or not guilty of murder. The trial court's denial of appellant's requested instruction was proper.

### 3. *Evidence of Undisclosed Prior Bad Act*

Appellant claims the trial court committed reversible error in permitting the introduction of evidence implicating him in a second burglary at the Bailey residence (allegedly committed on September 3, 4, 5 and 6, 1982), which had been previously dismissed by the prosecution and which he claims had not been disclosed to the defense as a prior bad act.[2] In response, the State argues that the second burglary was disclosed to the defense in an April 11, 1983 Supplemental Disclosure. Further, the State urges that the evidence was not introduced as a prior bad act, and in the alternative, that the appellant has failed to show an abuse of discretion in the trial court's failure to impose sanctions.

■ The rules governing criminal discovery require that the prosecution make available to the defendant a list of all prior acts of the defendant which the prosecutor will use to prove motive, intent or knowledge or otherwise use at trial, no later than ten days after arraignment. Rule 15.-1(a)(6), Ariz.R.Crim.P., 17 A.R.S. The purpose of the rule is to give "full notification of each side's case-in-chief so as to avoid unnecessary delay and surprise at trial." *State v. Dodds*, 112 Ariz. 100, 102, 537 P.2d 970, 972 (1975).

---

**2.** Appellant objects to the following exchanges between the prosecutor, Mr. Alfred, and Ms. Bailey:

Q. (By Mr. Alfred): Mrs. Bailey, let me show you what has been marked as State's Exhibit Four for identification and ask if you recognize this item.
A. [Mrs. Bailey]: Yes, I do.
Q. What do you recognize it as being?
A. A backpack that belonged to my daughter.
Q. Was this present in your home prior to your leaving on that Columbus Day weekend?
A. I'm not sure that it was present there prior to the Columbus Day weekend, but it was definitely there prior to the Labor Day weekend.

\* \* \* \* \* \*

Q. (By Mr. Alfred): Let me also show you what has been marked as State's Exhibit Number Five and ask you if you recognize this item.
A. [Mrs. Bailey]: Yes, I do.
Q. What do you recognize that as being?
A. That is a ski jacket that I bought for my daughter when she was still in high school.
Q. And is it in substantially the same condition as the jacket your daughter has now?
A. Yes, it is.

Q. Do you know when this jacket was taken from your residence?
A. Either on the Labor Day weekend or the Columbus Day weekend.

\* \* \* \* \* \*

Q. [Mr. Alfred]: Let me show you an item that has been marked as State's Exhibit Six and ask you if you can, do you recognize this item?
A. [Mrs. Bailey]: Yes, I do.
Q. What do you recognize that as being?
A. A shirt that belonged to my daughter.
Q. Do you know when that shirt was taken from your house?
A. I am not sure whether it was the Labor Day weekend or Columbus Day weekend. R.T., April 20, 1983, at 95–97.

A similar exchange took place regarding a tennis racket. *Id.* at 100. The tennis racket was later introduced to show that it had been found at the murder scene. *Id.* at 235–236. A typewriter was similarly introduced. R.T., April 22, 1983, at 44–45. Appellant objected to the introduction of these items and requested a mistrial, claiming prejudice resulting from the introduction of evidence pertaining to an undisclosed prior bad act.

■ We must first determine whether the State's Supplemental Disclosure of April 11, 1983 constitutes compliance under the Criminal Discovery Rules. We find it does not. The Supplemental Disclosure reads:

The State of Arizona, through the Santa Cruz County Attorney, by Robert Bruce Stirling, II, Chief Deputy County Attorney, hereby discloses it plans to utilize at trial as evidence of prior bad acts, defendant Ramon Martinez-Villareal's prior burglaries, as alleged in the Addendum to the Complaint already on file with the Court and hereby incorporated by this reference as if set forth in full herein.

Supplemental Disclosure, April 11, 1983. The addendum to the Supplemental Disclosure (entitled ADDENDUM TO INFORMATION) refers to two burglaries, the Aycock burglary, to which defendant pled guilty, and the Bailey burglary, which was consolidated with the murder counts for trial. Although appellant was originally charged with two counts of burglary at the Bailey residence, one occurring September 3, 4, 5 and 6, 1982, and one on October 8, 9, 10, 11, 1982, the September count was dismissed by the prosecution. Accordingly, the State's Supplemental Disclosure fails to properly put appellant on notice that the prosecution intended to admit the September burglary as evidence of a prior bad act.

■ Imposition of sanctions for nondisclosure pursuant to the discovery rules is a matter to be resolved in the sound discretion of the trial court and that decision should not be disturbed absent a clear abuse of discretion. *State v. Starks*, 122 Ariz. 531, 534, 596 P.2d 366, 369 (1979). In order for a reviewing court to find an abuse of discretion, appellant must demonstrate that he suffered prejudice by nondisclosure. *State v. Ramirez*, 116 Ariz. 259, 268, 569 P.2d 201, 210 (1977). Such prejudice relates to the issue of surprise or delay under the discovery rules. *See Dodds*, 112 Ariz. at 102, 537 P.2d at 972. We find that appellant was not prejudiced by the introduction of this evidence. Assuming ar-

guendo that the second burglary was being introduced to show prior bad acts, we do not find actual "surprise" or "delay" present. Appellant's own statement to the police, introduced at trial, indicates he was at least present at two separate burglaries at the Bailey residence. R.T., April 22, 1983, at 115–16, 161–62. In addition, there is force to the argument that the evidence was not being introduced as "bad acts" testimony. The prosecution argues that evidence of the property stolen from the Bailey residence "figures prominently" in the murder trial. We agree. It would be unreasonable for appellant to expect that the prosecution would not attempt to link appellant to the murders through tracing stolen goods from the Bailey home to the murder scene. When defense counsel objected to the introduction of the second burglary, the prosecution agreed to limit questioning to avoid reference to "when" the goods were stolen, and simply focus on the fact that the stolen goods were found at the murder scene. We find no abuse of discretion on the part of the trial court in admitting the challenged evidence.

### 4. *Undisclosed Mexican Police Reports*

■ Appellant claims it was reversible error for the trial court to permit the admission of testimony by Officer Rigoberto Miranda because, while testifying, Miranda referred to reports (a booking slip and a weapons arrest report) which were undisclosed to the defense. At trial, defense counsel objected, based upon the disclosure provisions of Rule 15.1 of the Arizona Rules of Criminal Procedure, and requested a mistrial. The trial court rejected appellant's request for a mistrial on the ground that the reports were not in the control of the prosecution, and disclosure of the reports was accordingly exempted from the rule. We can find no reason to disturb the trial court's denial of a mistrial in this case.

Rule 15.1(a), Arizona Rules of Criminal Procedure, 17 A.R.S. provides in pertinent part:

No later than 10 days after the arraignment in Superior Court, the prosecutor shall make available to the defendant for examination and reproduction the following material and information *within his possession or control:*

(1) The names and addresses of all persons whom the prosecutor will call as witnesses in the case-in-chief together with their relevant written or recorded statements....

(emphasis added). The existence of the reports in the present case were revealed for the first time in testimony by Officer Miranda of the Empalme police department. The State was apparently not aware of these reports until Miranda's testimony. The reports were prepared exclusively by the Empalme police department. Rule 15.1 explicitly refers to material "within [the prosecutor's] possession *or control.*" The reports in the present case were not in the State's "possession or control." We find the trial court was not in error in denying the defense motion for a mistrial.

### 5. *Imposition of the Death Penalty*

#### (a) Objections to Voir Dire

Appellant claims he was denied the right to a fair trial by the systematic exclusion of every potential juror who objected to the death penalty. Appellant relies on the case of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) (right to impartial jury violated where all venire members who expressed conscientious objection to capital punishment excused for cause). The United States Supreme Court examined the scope of *Witherspoon* in *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) and held that "A juror may not be challenged for cause based on his views about capital punishment *unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Id.* 448 U.S. at 45, 100 S.Ct. at 2526, 65 L.Ed.2d at 589 (emphasis added). Recently, the Court reaffirmed the *Adams* standard in *Wainwright v. Witt,* — U.S. ——, ——, 105

S.Ct. 844, 852, 83 L.Ed.2d 841, 851 (1985). Arizona has been operating, for some time, under a test identical to the one set forth in *Adams.*

We have expressly held that jury questioning regarding capital punishment is permissible where the questioning determines bias of a nature which would prevent a juror from performing his duty. *State v. Smith,* 123 Ariz. 231, 237, 599 P.2d 187, 193 (1979); *State v. Clark,* 126 Ariz. 428, 431, 616 P.2d 888, 891, *cert. denied* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). Under the procedure used in Arizona in death penalty cases, the jurors' duty is to determine guilt or innocence, while the sentence of death is solely the responsibility of the trial judge. Nevertheless, voir dire questioning related to a juror's views on capital punishment is permitted to determine whether those views would prevent or substantially impair the performance of the juror's duties to decide the case in accordance with the court's instructions and the juror's oath.

The trial court questioned four jurors individually who had expressed discomfort with the possibility of a death sentence in event of conviction. Of the four jurors, three were excused by the trial judge. In each instance jurors expressing reservation were questioned concerning their ability to consider the case impartially at trial. Of the three jurors who were excluded, the judge's decision to exclude them was based exclusively upon the juror's announced inability to make an impartial determination of guilt or innocence in the case. We conclude that voir dire was properly conducted, and the jurors were excluded under the standards required by the sixth and fourteenth amendments.

#### (b) Propriety of Death Penalty under *Enmund*

Appellant challenges the imposition of the death sentence on the grounds that the trial court failed to make a finding in conformity with the requirements of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Specifically,

appellant asserts that the State's theory of the case was based on felony-murder, and a jury determination of guilt would not dispositively resolve, beyond a reasonable doubt, whether defendant killed, attempted to kill, or intended to kill. We resolved this issue in *State v. McDaniel*, 136 Ariz. 188, 199, 665 P.2d 70, 81 (1983), when we found that it was incumbent upon the trial judge to make a determination, beyond a reasonable doubt, whether defendant killed, attempted to kill, or intended to kill to satisfy the requirements of *Enmund*. We find that the trial judge made such a determination in the present case. We rely on the following statement in the sentencing transcript:

> With regard to the fact that you were found guilty of felony murder, I heard the testimony completely and although the charge was one for felony murder, I specifically find in light of the evidence that you actively and deliberately took part in the murder and that you intended to kill both of those victims, either yourself or through the use of your companion, Mario.

R.T., May 20, 1983, at 34. Following an independent review of the record we are in agreement that, although the trial judge did not use the terminology "beyond a reasonable doubt," the trial judge made the finding under the required degree of proof. Appellant's story to police that he was merely a reluctant participant, coerced by a teenager, was rejected by the jury in its verdict and by the trial judge. Appellant's statements to David Meza-Monreal not only claimed responsibility for the murders, but assigned his motive as machismo. The trial judge specifically relied upon this evidence in the sentencing report. We find the requirements of *Enmund* satisfied.

### (c) *Lack of Intent as a Mitigating Factor*

Appellant correctly notes that lack of intent to kill is a mitigating circumstance. *See State v. McDaniel*, 136 Ariz. at 200–01, 665 P.2d at 82–83 (intention to kill considered in addition to A.R.S. § 13–703(G)(1)–(5) in determination of mitigating circumstances). The burden is upon the defendant, however, to show mitigating circumstances in capital cases. *State v. McMurtrey*, 143 Ariz. 71, 72, 691 P.2d 1099, 1100 (1984). We have required that defendant show "some form of affirmative evidence." *Id.* at 72, 691 P.2d at 1100. We find such affirmative evidence lacking in the present case. Appellant's contention that he was only an unwilling participant was, as noted before, rejected by the jury in their verdict and the trial judge in his finding. In finding *Enmund* satisfied, we find adequate support in the record that appellant intended to kill. Appellant's only evidence on this point is his own statement which is different from that given to his friend David Meza-Monreal. The trial court's rejection of this mitigating circumstance is supported by the evidence.

### (d) *Depravity*

In the trial judge's determination of aggravating circumstances he found that the defendant committed the murders in a depraved manner and for pecuniary gain. Appellant contests only the depravity finding.[3] In finding depravity, the court relied upon the testimony of David Meza-Monreal in which he told police that defendant related to him that the defendant murdered to show "manliness."

This court has previously defined depravity as "marked by debasement, corruption, perversion or deterioration." *State v. Poland*, 132 Ariz. 269, 285, 645

---

3. The Sentencing/Judgment signed by the trial judge provided in pertinent part:
   These crimes were committed in a depraved manner. The depravity referring to the Defendant's state of mind during the commission of the crime. The evidence indicated that Defendant took the life of the two individuals just for the purpose of taking their lives knowing that he could have robbed them without the necessity of taking their lives. Specifically, the Defendant related to David Meza Monreal that he took these two lives because of "his huveos." The Court understands this to mean that he took the lives just to show "manliness."

P.2d 784, 800 (1982) (quoting *State v. Lujan*, 124 Ariz. 365, 372, 604 P.2d 629, 636 (1979). In order to determine depravity the court must focus on defendant's state of mind. *State v. Poland*, 132 Ariz. at 285, 645 P.2d at 800. Defendant's state of mind may be inferred from behavior at or near the time of the offense. *Id.* Depravity includes the apparent relishing of the murder by the killer, the senselessness of the crime, and the helplessness of the victim. *State v. Gretzler*, 135 Ariz. 42, 51–52, 659 P.2d 1, 10–11, *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The evidence in the record shows that the appellant murdered during the course of a robbery in which his victims were unarmed and offered no apparent resistance. Martinez-Villareal bragged that he murdered to show "machismo." Murdering another human being to show manliness constitutes depravity in that the killer senselessly takes life to demonstrate his superiority over his victims. This horrific form of ego gratification constitutes a manifest disregard for the fundamental principles upon which our society is based. The victims were unarmed. The murders were "senseless," and appellant "relished" his deed as is apparent by his statement to Meza-Monreal. We find appellant's behavior depraved within the statutory terms and as construed by this court.

▮ Although not contested by appellant, we find that the murder in this case was committed for pecuniary gain so as to render it an aggravating circumstance in capital sentencing. A.R.S. § 13–703(F)(5). Substantial evidence was introduced that appellant was at the murder scene to rob McGrew and Estrada and to take McGrew's pickup truck. The pecuniary gain provision has often been applied in circumstances similar to the present case. *See State v. Graham*, 135 Ariz. 209, 212–13, 660 P.2d 460, 463–64 (1983); *State v. Gretzler*, 135 Ariz. at 50, 659 P.2d at 9; *State v. Clark*, 126 Ariz. at 436, 616 P.2d at 896. We conclude that the finding was properly made in this instance.

**(e)** *Consideration of Mitigating Circumstances*

Appellant asserts that the trial court, during sentencing, failed to consider mitigating circumstances as set forth in the sentencing provisions, A.R.S. § 13–703(G). The transcript of the May 20 sentencing belies this contention and reflects that the trial court carefully considered the existence of any mitigating circumstances, including those found in A.R.S. § 13–703(G). As noted before, the appellant continued to maintain his claim that he acted under duress and that his participation in the crimes was minor. The trial judge, as had the jury, rejected the appellant's position. The trial judge also found that any other mitigating circumstances were not sufficiently substantial to justify leniency.

▮ From our independent review of the evidence we conclude that any mitigating factors were not sufficiently substantial to justify leniency, and we agree with the finding of the trial court that the claim of appellant to be acting under duress and in a minor role in the crimes is not supported by the evidence.

**6.** *Proportionality Review*

▮ In addition to considering appellant's claims of error, this court will make an independent review to determine whether the sentence is excessively disproportionate compared with similar sentences for first-degree murder in Arizona. In this case, the trial judge found, and we agree, that appellant committed the double homicide both for pecuniary gain, and in an especially depraved manner. No significant mitigating circumstances are present. The death penalty has been previously imposed in cases similar to this case. *See, e.g., State v. McCall*, 139 Ariz. 147, 160–62, 677 P.2d 920, 933–35 (1983), *cert. denied* — U.S. ——, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984); *State v. Gretzler*, 135 Ariz. at 57–58, 659 P.2d at 16–17; *State v. Gillies*, 135 Ariz. 500, 511–15, 662 P.2d 1007, 1018–22 (1983). In examining cases in which the death sentence was reduced to a sentence of life imprisonment, we can find no similar

circumstances which argue for reduction of the sentence in this case. We find the imposition of the death penalty in this case not disproportionate to the imposition of the death penalty in prior cases in this state.

From our independent review of the evidence, we conclude that the aggravating circumstances described before have been established and no mitigating circumstances are present in this case sufficiently substantial to call ·for leniency. We have searched the record for fundamental error and have found none. Accordingly, the judgment and sentence are affirmed as to all counts.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.