The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Danny Nieto MARTINEZ, Jr., Defendant–Appellant.

No. 99CA1325.

Colorado Court of Appeals, Div. III.

Oct. 12, 2000.

Certiorari Denied June 11, 2001.*

---

* Justice MARTINEZ would grant as to the following issues:

Whether it is contrary to the provisions of Colo. Crim. P. 24(a)(2) for the trial court to advise the entire venire that the prosecution is seeking the death penalty when penalty is a "matter[] that jurors will not be required to consider and apply in deciding issues" is the case.

Whether in view of a criminal defendant's constitutional rights to due process, an impartial jury and equal protection of the law, the defendant may challenge a juror for cause under *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), which held that in a capital case in which the jury determines penalty a prospective juror may be excluded if his performance of his duties in accordance with the jury instructions and his oath as a juror when a three-judge panel would be responsible for making the decision of whether a death sentence was appropriate rather than the jury.

Ken Salazar, Attorney General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Susan L. Foreman, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Danny Nieto Martinez, Jr., appeals from a judgment of conviction entered upon jury verdicts finding him guilty of first degree felony murder, after-deliberation first degree murder, second degree kidnapping with a special finding that it was committed on a victim of sexual assault who suffered serious bodily injury, first degree sexual assault with a special finding that he was physically aided or abetted by one or more persons and that the victim suffered serious bodily injury, sexual assault on a child, and first degree assault. We affirm.

The defendant was a member and the leader of a street gang known as the "Duece 7 Crenshaw Westside Mafia Gangsters," a sect of the Denver Bloods. Some junior gang members picked up the victim, a fourteen-year-old girl, waiting at a bus stop, and took her to a residence frequented by the gang.

There, the victim was, over the next one and a half to two hours, repeatedly raped vaginally, orally, and anally by most, if not all, of the gang members present in the house. During this time, the victim cried, begged to be released or taken to the hospital, promised not to tell anyone what had happened, and asked for God's help. The victim was then dressed in a pair of jeans, and the defendant placed a hooded sweatshirt on her backwards to obstruct her vision and handcuffed her.

The gang members then discussed, in the presence of the victim, how they should dispose of her. Having determined that she should be killed, they discussed who would kill her and how. The victim begged for her life. The defendant and another gang member placed the victim in the back seat of a car and, while defendant restrained her and she begged for her life, another gang member stabbed her a number of times and strangled her until she was unconscious.

They then drove to Clear Creek Canyon where they dragged her from the car and one of the gang members held her down while another stabbed her repeatedly in the neck, apparently inflicting the death wounds.

On the morning after, the defendant returned to the residence and removed the victim's clothing, jewelry, and the bloody bedding. He gave the victim's shoes to a cousin. A few days later, he returned and disposed of the mattress.

The prosecution sought the death penalty. However, after a sentencing hearing, the defendant was sentenced to life in prison without the benefit of parole for first degree murder and a total of 160 years on the remaining convictions to be served consecutively. This appeal followed.

I.

Defendant first argues that the trial court erred in instructing the jurors that the prosecution had requested the death penalty, and that their role in this case had nothing to do with the penalty so they should not consider it, and then permitting the prosecution to "death-qualify" the jury. Defendant contends that these practices are contrary to Colorado law because they permit the questioning of prospective jurors on an issue they will be forbidden to consider. Defendant further argues that these practices also violate his constitutional right to a fair and impartial jury because a "death-qualified" jury is more likely to favor the prosecution. We disagree.

■ At the outset, we do not agree that this jury was "death-qualified." Indeed, the trial court specifically stated that the jury would not be "death-qualified." A "death-qualified" jury is qualified to decide a case involving the death penalty because the jurors have no absolute ideological bias against capital punishment. *Black's Law Dictionary* 861 (7th ed.1999); see also *State v. Clark*, 126 Ariz. 428, 616 P.2d 888 (1980). Because we have concluded that this jury was not "death-qualified," we render no opinion here as to whether the prosecution is entitled to such a jury when the death penalty has been requested.

■ We also reject the defendant's contention that the trial court erred in advising the prospective jurors, at the outset, that the prosecution was seeking the death penalty. He objects to the timing of that instruction. The defendant suggests that the jury should

be so advised after voir dire but prior to the presentation of evidence.

As the supreme court observed in *People v. District Court*, 190 Colo. 342, 345, 546 P.2d 1268, 1270 (1976): "[w]e would be dealing in fantasy if we were to subscribe to the notion that a jury is not going to know that, upon conviction of first-degree murder, the defendant *may* be sentenced to death." (emphasis in original). In our view, it would be a flight of fantasy of at least equal proportions to subscribe to the notion that, in light of the controversy surrounding the death penalty and the public attention given cases in which it is requested, that most, if not all, of the prospective jurors were not aware that the death penalty had been requested in this case by the time they arrived in the courtroom.

■ A defendant in a criminal proceeding has a fundamental constitutional right to a trial by fair and impartial jurors, *see People v. Abbott*, 690 P.2d 1263 (Colo.1984); *Brisbin v. Schauer*, 176 Colo. 550, 492 P.2d 835 (1971), and the purpose of *voir dire* examination is to enable counsel to determine whether any prospective jurors are possessed of beliefs that would cause them to be biased in such a manner as to prevent the defendant from obtaining a fair and impartial trial. *People v. Collins*, 730 P.2d 293 (Colo.1986).

■ Though the entitlement may not rise to a constitutional level, the prosecution also is entitled to a fair and impartial jury. *See United States v. Wilson*, 571 F.Supp. 1422 (S.D.N.Y.1983); *State v. Montano*, 136 Ariz. 605, 667 P.2d 1320 (1983); *State v.. Lacy*, 851 S.W.2d 623 (Mo.App.1993).

■ The test for determining whether a prospective juror should be disqualified for bias is whether that person will render a fair and impartial verdict according to the law and the evidence presented at trial. *See* § 16–10–103(1)(j), C.R.S.2000; *see also People v. Fuller*, 791 P.2d 702 (Colo.1990).

The trial court, without objection, instructed the prospective jurors at the beginning of voir dire as follows:

In Colorado a person convicted of first degree murder may be sentenced to either life imprisonment or the death penalty. The prosecution will seek the death penalty if [the defendant] is convicted of murder in the first degree. The penalty decision under Colorado law is made by a panel of three judges. The jury does not have any part in deciding what the penalty should be. And you should not consider this aspect of the case for any purpose.

■ After making preliminary comments, instructing the jury, and asking some preliminary questions, the trial court handed out a jury questionnaire asked whether the prospective jurors had "any moral, religious, political or other beliefs that may effect (sic) your service as a juror?" If the juror responded in the affirmative, he or she was asked to explain.

Five prospective jurors answered this question in the affirmative, and were interviewed separately *in camera*. Four voiced strong objections to the death penalty and indicated that their objections would significantly impact their ability to follow the court's instructions. These jurors were removed for cause at the request of the prosecution. The fifth prospective juror stated that she could be fair and impartial and was not removed for cause.

The panel was not asked direct, unprompted, and open-ended questions concerning their attitudes on the death penalty and whether, or how, that attitude might impact their service. Only those prospective jurors who expressed concern about the death penalty in response to the juror questionnaire were questioned further, and that questioning was outside the presence of the remaining prospective jurors. Therefore, those prospective jurors who held views opposing the death penalty, but concluded on their own that their views would not prevent them from following the trial court's instructions and to render a fair and impartial verdict, were never questioned on the subject. The only jurors excused for cause because of their attitudes on the death penalty were those who, despite attempts to rehabilitate them, persisted in the view that their attitude would impact their ability to render a fair and impartial verdict.

In Arizona, a state in which death penalty sentencing is done by the trial judge, the prosecutor is permitted to inquire into death penalty issues and challenge jurors whose bias would render it impossible for them to render a fair and impartial verdict based on the facts and the instructions of the trial court. *See State v. Hyde,* 186 Ariz. 252, 921 P.2d 655 (1996); *State v. Atwood,* 171 Ariz. 576, 832 P.2d 593 (1992).

In *State v. Martinez–Villareal,* 145 Ariz. 441, 449, 702 P.2d 670, 678 (1985), the supreme court of Arizona stated:

> We have expressly held that jury questioning regarding capital punishment is permissible where the questioning determines bias of a nature which would prevent a juror from performing his duty.... Under the procedure used in Arizona in death penalty cases, the jurors' duty is to determine guilt or innocence, while the sentence of death is solely the responsibility of the trial judge. Nevertheless, voir dire questioning related to a juror's views on capital punishment is permitted to determine whether those views would prevent or substantially impair the performance of the juror's duties to decide the case in accordance with the court's instructions and the juror's oath.

Similarly, we conclude that it was not error for the trial court to advise the prospective jurors at the outset of voir dire that, if the defendant is convicted of first degree murder, the death penalty was a possible penalty. We further conclude that the trial court did not err in permitting the prosecution to question prospective jurors who indicated in response to an open-ended inquiry by the court that their beliefs with respect to the death penalty might impact their ability to render a fair and impartial verdict on the offenses charged.

## II.

Defendant next argues that the trial court erred by denying his motion *in limine* to exclude evidence of gang affiliation on the grounds that it was irrelevant pursuant to CRE 401 and CRE 402; if relevant, its probative value was outweighed by unfair prejudice pursuant to CRE 403; and that it was inadmissible evidence of bad character pursuant to CRE 404. Consequently, defendant argues, his trial was fundamentally unfair in violation of his constitutional right to due process of law. We disagree.

█ Evidence of a defendant's prior criminal acts is inadmissible to prove that a defendant committed the crime for which he or she is charged. CRE 404(b). However, evidence of other offenses or acts that are part and parcel of the criminal episode is admissible as *res gestae. People v. Quintana,* 882 P.2d 1366 (Colo.1994).

█ *Res gestae* evidence provides the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred, including events closely related in time and nature to the charged offense. *Res gestae* evidence is not subject to the general rule of CRE 404(b) that excludes evidence of prior criminality, and thus, such evidence can be admitted without a limiting instruction. *People v. Quintana, supra.*

█ The prosecution's theory of the case was that the defendant was guilty of the victim's murder as a complicitor because he aided, abetted, advised, and encouraged his fellow gang members in their actions. Evidence of a defendant's membership in a gang is admissible to explain his conduct in the criminal episode. *See People v. Mendoza,* 876 P.2d 98 (Colo.App.1994).

The criminal episode was a group activity in which most, if not all, of the members of the gang present participated. The gang members acted in concert. There was ample evidence that the criminal episode was a gang activity. Evidence of the defendant's membership and leadership position within the gang was central to the prosecution's theory of the case and to an understanding of how and why these tragic events occurred as well as the extreme violence that was visited on the victim. Indeed, it would probably not be possible to tell the story of these events without referring to the relationship among the actors, who were all members of the gang.

Contrary to the defendant's argument, we do not accept the proposition that such a concerted and structured criminal episode

could have been explained by the fact that the perpetrators were related and/or had social connections.

Moreover, the trial court issued a limiting instruction to the jury in the closing jury instructions stating:

Guilt may not be inferred from mere association. Membership in a gang is not itself a crime. Therefore your decision shall not be affected by evidence, without more, that the defendant was a member of a gang. You are expected to carefully and impartially consider all of the evidence, and follow the laws as stated by the Court.

We presume that the jury followed this instruction because there is nothing in the record to suggest otherwise. *People v. Bielecki*, 964 P.2d 598 (Colo.App.1998).

We conclude that the trial court did not abuse its discretion in concluding that the evidence was relevant, its probative value was not substantially outweighed by the danger of unfair prejudice, and that it was *res gestae* of the charged crimes. *See People v. Czemerynski*, 786 P.2d 1100 (Colo.1990).

Judgment affirmed.

Judge NEY and Judge DAVIDSON concur.