The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Keith RIVERS, Defendant–Appellant.

No. 00CA2275.

Colorado Court of Appeals, Div. I.

Nov. 21, 2002.

Certiorari Denied June 2, 2003.

Ken Salazar, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Daniel W. Edwards, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Keith Rivers, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree murder after deliberation. We affirm.

The victim was shot to death outside a tavern. Based on initial information, the police obtained an arrest warrant for L.D.D. However, further investigation implicated defendant, and he was charged with first degree murder after deliberation.

Two eyewitnesses, who testified at trial, positively identified defendant as the shooter, and the police investigation established that the murder weapon was a .25 caliber gun. Defendant argued that the prosecution failed to prove beyond a reasonable doubt that he was the perpetrator, and he suggested that L.D.D. had killed the victim.

To meet its burden of proof, the prosecution sought to introduce, over defendant's objections, the following evidence: (1) defendant was at the tavern on the day of the shooting, and while there, he had a small, shiny gun that he showed to a number of people and pointed at one patron's head; (2) defendant said he wanted to see what it felt like to shoot someone; and (3) defendant stated that "there's going to be some gun smoke." After a pretrial hearing, the trial

court concluded that this evidence was admissible.

In the first trial, the jury submitted questions to the court regarding issues of guilt and innocence, and the trial court, on recommendation from defendant, referred the jury to the original instructions. After nearly two and a half days of deliberation, the foreman informed the court that the jury had reached a deadlock as to defendant's guilt or innocence. The trial court then declared a mistrial sua sponte and discharged the jurors. Defendant moved to dismiss on double jeopardy grounds, arguing that the trial court erred in declaring a mistrial sua sponte and in failing to poll each juror concerning the deadlock. The court denied relief.

Before the second trial, defendant renewed his motion to dismiss based on double jeopardy grounds, advancing both the arguments previously raised and the argument that the court should consider a juror's postdeliberation statement that the jury had been split eleven for acquittal and one for conviction. The court declined to consider the juror's statement under CRE 606(b) and denied the motion.

In the second trial, the jury found defendant guilty of first degree murder after deliberation, and he was sentenced to life in the DOC. This appeal followed.

### I.

Defendant contends that the second trial constituted double jeopardy and his conviction therefore should be reversed. We disagree.

### A.

Defendant first argues that the jury's questions in the initial trial indicated its misunderstanding of the prosecution's burden of proof, and therefore, the trial court erred in referring the jury to the original jury instructions. We are not persuaded.

■ The doctrine of invited error precludes a party from complaining on appeal of an error that he has injected into the case. *People v. Gregor,* 26 P.3d 530 (Colo.App. 2000). Active participation in the prepara-

tion of a response to a jury question, or express agreement with it, bars the participant from arguing that the response constitutes error. *People v. White,* 64 P.3d 864, 2002 WL 1339115 (Colo.App. No. 99CA2415, June 20, 2002)(citing *People v. Bielecki,* 964 P.2d 598 (Colo.App.1998)).

■ Here, during deliberations, the jury requested clarification of the following questions:

(1) If I cannot find Keith Rivers guilty, must I find him not guilty? (2) Do I have another choice or option between guilty and not guilty? In my mind not being able to find him guilty does not make him not guilty. (3) I want to know what happens if we feel we are deadlocked?

Defendant expressly requested that as the response to these questions, the jury be directed to the original instructions. Therefore, defendant cannot now complain that referral to the original instructions was improper.

Furthermore, *United States v. Wells,* 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997), is not dispositive of this issue, nor is it inconsistent with our holding. There, the doctrine of invited error did not prevent the court from addressing a question raised on certiorari, although the court observed that a party's request for a particular jury instruction is one of several factors to be considered in determining the merit of an inconsistent position on appeal.

### B.

Defendant contends that the trial court erred in declaring a mistrial sua sponte. The contention is unavailing.

■ When a jury is deadlocked, there is a "manifest necessity" to declare a mistrial and terminate the proceedings. *People v. Schwartz,* 678 P.2d 1000 (Colo.1984). Factors to be considered in reaching a determination that manifest necessity exists include: (1) the jury's collective opinion that it cannot agree; (2) the length of the trial; (3) the complexity of the issues; (4) the length of time the jury has deliberated; (5) whether the defendant has made timely objections to

a mistrial; and (6) the effects of exhaustion or coercion on the jury. *People v. Schwartz, supra.* In the event of a deadlock, the court may terminate a prosecution sua sponte. Section 18–1–301(2)(b)(IV), C.R.S.2002. Thus, when a criminal trial is properly terminated by a declaration of mistrial, reprosecution of the accused is not barred by double jeopardy. *People v. Schwartz, supra.*

■ The decision to declare a mistrial is a matter of trial court discretion and will not be disturbed on appeal absent an abuse of discretion prejudicing the defendant. *People v. Hayward,* 55 P.3d 803 (Colo.App.2002). Some care must be taken when declaring a mistrial to confirm that the jury is in fact deadlocked. *People v. Urrutia,* 893 P.2d 1338 (Colo.App.1994).

■ After substantial deliberation, the jury submitted a note to the court reporting that they had "exhausted [their] efforts in attempting to reach a unanimous decision." Aided by suggestions from counsel, the court asked the jury whether it was deadlocked over guilt or innocence or degree of guilt. Defendant then suggested that deadlock should prompt a jury poll. The court determined that further deliberations would be futile when the foreman confirmed that the jury was deadlocked over guilt or innocence.

Because the trial court confirmed that meaningful progress toward a verdict had ceased, and it could observe first-hand the jury's responses to inquiries, we will not disturb its exercise of discretion in declaring the mistrial. *See People v. Lewis,* 676 P.2d 682 (Colo.1984).

### C.

Defendant's contention that the jury must be polled in event of deadlock is a novel suggestion unsupported by reported decisions in Colorado.

Defendant cites Crim. P. 31(d) as support for his position that each juror should be polled by the court before declaring a mistrial. However, Crim. P. 31(d) specifically applies "when a verdict is returned" and contains no direction to poll jurors prior to a verdict. Although the rule contemplates that a juror may disagree with a verdict, thereby

permitting the court to direct further deliberations or to discharge the jury, the rule contains no provision for the situation where the jury reports that it cannot, and likely will not, reach a verdict. The very reason for polling the jury—confirming that the verdict is unanimous—is obviated by the revelation that a lack of unanimity precludes a verdict.

■ Contrary to defendant's allegations, a court may declare a mistrial without further questioning the jury if the record supports the determination that the jury is unlikely to reach a unanimous verdict. *See People v. Urrutia, supra* (court properly declared a mistrial without questioning the jury in open court after receiving a note from the jury that it was deadlocked).

■ Here, the communications from the jurors support the determination that progress toward a unanimous verdict was unlikely. Thus, we perceive no abuse of discretion in the trial court's decision not to poll individual jurors. *Cf. United States v. Jefferson,* 258 F.3d 405 (5th Cir.2001)(control over the trial proceedings is within the discretion of the trial court). Indeed, the very result sought by defendant's request to poll was achieved when the court twice sent the jury back to deliberate before it was ultimately discharged.

### D.

Defendant also contends that the trial court erred in finding that CRE 606(b) precluded it from considering a juror's statement when ruling on the motion to dismiss. We reject this contention.

CRE 606(b) provides, in pertinent part:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict ... except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jurors' attention or

whether any outside influence was improperly brought to bear upon any juror.

Juror testimony divulging juror deliberations, thought processes, confusion, mistake, intent, or other grounds for impeaching the verdict is excluded under CRE 606(b). These restrictions emanate from the common law traditions of preserving the freedom and integrity of jury deliberations, stability in the judicial process, and finality of verdicts and of protecting jurors against annoyance, embarrassment, and coercion. *Stewart v. Rice*, 47 P.3d 316 (Colo.2002).

▮ Here, defense counsel reported that, after the jury was discharged, a juror informed him that the jury was split with a vote of eleven for acquittal and one for conviction and that the jurors did not know that the vote prior to the mistrial was going to be the final vote. We note that there is no affidavit from the juror in the record; the statement is only included in defendant's motion to dismiss. *See Stewart v. Rice, supra.*

The court refused to consider the juror's statement, holding that under CRE 606(b), it was impermissible to inquire into the juror's thought processes. Defendant argues that CRE 606(b) should not apply here because the inquiry is not whether the verdict is valid, but rather whether the trial court erred in declaring a mistrial.

Colorado courts have not specifically addressed the issue of whether CRE 606(b) applies to deliberations prior to a verdict. We determine that it does.

The integrity of jury deliberations and assurance that jurors will be protected from coercion are no less important in the process of attempting to reach a verdict than they are in the process of polling a jury once the verdict is reached. To hold otherwise would disserve the purpose of CRE 606(b) and expose individual jurors to potential harassment or pressure that the rule was designed to avoid.

▮ Defendant has not suggested that some extraneous prejudicial information or outside influence tainted the deliberation process. Instead, defendant contends that the court erred in declaring a mistrial in the first instance and compounded this error by refusing to consider statements from the jury which would presumably impeach the foreman's report that the jury was deadlocked. However, the record contains no information indicating that the jury was close to rendering a verdict. In fact, the statements which defendant claims were excluded in error actually corroborate the foreman's representation that the jury was deadlocked.

We therefore conclude that the trial court properly excluded the juror's statements under CRE 606(b) when ruling on defendant's motion for dismissal.

## II.

Defendant next contends that, because the trial court erred in admitting "other act" evidence under res gestae principles and CRE 404(b), his conviction should be reversed or the case remanded for a new trial. We disagree.

### A.

Defendant argues that the trial court erroneously applied the res gestae theory to admit evidence that, on the day of the shooting, he was at the tavern; possessed a shiny, small gun; and stated to a bar patron that there was "going to be some gun smoke." We are not persuaded.

▮ When evidence occurs "contemporaneously with or is part and parcel of the crime charged," it is properly admitted under the res gestae theory. *People v. Czemerynski*, 786 P.2d 1100, 1109 (Colo.1990). Such evidence includes events closely related in time and nature to the offense charged. *People v. Martinez*, 24 P.3d 629 (Colo.App. 2000).

▮ To be admissible, res gestae evidence must be relevant, and its probative value must not be substantially outweighed by the danger of unfair prejudice. We review such evidence in the context of the entire record to determine whether it adversely affected the defendant's position. *People v. Mack*, 33 P.3d 1211 (Colo.App. 2001).

■ Res gestae is not subject to the procedural requirements of evidence introduced pursuant to CRE 404(b), *People v. Young,* 987 P.2d 889 (Colo.App.1999), and thus, no cautionary instruction is necessary. *People v. Rudnick,* 878 P.2d 16 (Colo.App.1993).

■ A determination on the admissibility of res gestae evidence will not be disturbed on appeal unless the trial court abused its discretion. *People v. Mack, supra.*

■ Witness T.B. testified that defendant followed him into the bathroom at the tavern in the late afternoon on the day of the shooting, flashed a small silver gun at him, and stated, "there's going to be some gun smoke."

The court admitted this evidence as res gestae, finding that the incident occurred on the same day, in the same place, and less than ten hours before the murder. The court also admitted this evidence under CRE 404(b), noting that the incident concerned a relevant matter and that the jury "could make the logical and relevant inference, and not just the bad character inference." The court gave a general limiting instruction that the testimony was being offered only for the purpose of proving identification, intent, plan, preparation, knowledge, or absence of mistake or accident.

Witness J.N. testified that he had seen a man he knew only as "baby face" with a small silver gun in the tavern on the evening of the shooting. There was no attempt during J.N.'s testimony to identify defendant as "baby face," although other evidence was received which suggested that defendant was known by that alias.

The court admitted this evidence both as res gestae and under CRE 404(b). The court noted that the evidence was logically relevant, the jury could determine that it was offered for the sole purpose of identification, and the evidence was not unfairly prejudicial. No limiting instruction was given.

Here, the T.B. and J.N. incidents occurred at the same place, on the same day, and within ten hours of the shooting. This evidence directly concerns defendant's intent and deliberation, both elements of first degree murder, as well as defendant's identity and opportunity and motive to commit the crime. The evidence provided the jury with a full and complete understanding of the events surrounding the criminal episode and defendant's participation in it.

There was considerable testimony, including T.B.'s testimony, that defendant was known to some bar patrons as "baby face." That connection supported the admission of the evidence, and it was up to the jury to determine its weight. *See People v. Gilbert,* 12 P.3d 331 (Colo.App.2000).

Nor are we persuaded that the evidence is unfairly prejudicial. The other evidence against defendant was overwhelming, and therefore, there was little risk that the testimony admitted could have formed an improper basis for the jury's decision. *See People v. Mack, supra.*

Furthermore, the trial court properly instructed the jury that the T.B. incident should only be considered for limited purposes under CRE 404(b). Although it was not necessary to give this limiting instruction because of the res gestae nature of the evidence, to the extent that it limited the jury's consideration of the evidence, the instruction inured to defendant's benefit.

We therefore conclude that the trial court did not abuse its discretion in admitting the challenged evidence as res gestae. Because we determine that the T.B. and J.N. incidents were admissible as res gestae evidence, we need not consider the CRE 404(b) exclusion issue as it relates to these incidents. *See People v. Davalos,* 30 P.3d 841 (Colo. App.2001).

### B.

Defendant also contends that the court erred in admitting evidence under CRE 404(b) that, on the day of the shooting and at the tavern, he pointed a small, shiny gun at witness W.F.'s head and told him that he wanted to know what it felt like to shoot someone. We disagree.

Evidence of other bad acts is admissible only if it is logically relevant apart from an inference that the defendant acted in conformity with the character trait and if the

probative value of the evidence is not substantially outweighed by unfair prejudice. CRE 404(a); *People v. Rath*, 44 P.3d 1033 (Colo.2002)(citing *People v. Spoto*, 795 P.2d 1314 (Colo.1990)).

The prosecution must show that: (1) the evidence relates to a material fact; (2) the evidence has logical relevance by tending to make the material fact more probable; (3) the logical relevance is independent of an intermediate inference that the defendant has a bad character, which would be employed to support a further inference that the defendant acted in conformity with his bad character; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v. Spoto, supra.*

A trial court has substantial discretion in deciding questions concerning the admissibility of evidence, and therefore the trial court's rulings will not be overturned unless there is an abuse of discretion. *People v. Duncan*, 33 P.3d 1180 (Colo.App.2001).

W.F. testified that on the afternoon of the shooting, "someone" sat down with him at the bar and showed him a "shiny object" that "could have been a gun." Before this testimony was offered, the court cautioned the jury to consider it only for the limited purpose of identification.

To explain W.F.'s vague testimony, the prosecution sought to introduce T.B.'s testimony that defendant, whom he also knew as "baby face," had pulled out a gun and pointed it at W.F. on the day of the shooting. T.B. stated that when defendant left, T.B. asked W.F. what had happened, and W.F. told T.B. that defendant told him "he wanted to see what it felt like to shoot somebody."

The trial court concluded that the evidence regarding the W.F. incident was "a distinct transaction" that could not be directly tied to the murder that took place at 10:30 that night and was therefore only admissible under CRE 404(b). The court gave a general CRE 404(b) limiting instruction before this testimony from T.B. Defendant objected, stating that the instruction should have indicated that the testimony was only being offered for the purpose of identification, but declined a corrected instruction. After T.B.'s testimony, the court gave an instruction that the testimony was offered only for the limited purpose of identification. Before the jury began deliberations, the trial court gave a final limiting instruction.

The principal issue at trial was the identity of the perpetrator of the offense. The W.F. incident evidence was material to the determination whether it was defendant who committed the crime. Defendant's presence at the tavern on the day of the shooting and his possession of a gun on that date are relevant to establish that he had the necessary means and opportunity to commit the crime, and to rebut defendant's theory that L.D.D. was the perpetrator. Finally, there is some nexus between the murder weapon and W.F.'s observations. Thus, we agree that the W.F. incident related to a material fact of the case independent of an intermediate inference that defendant was a man of bad character.

We also agree that the probative value of the evidence was not substantially outweighed by any unfair prejudicial impact, especially given the trial court's multiple limiting instructions to the jury. We presume that the jury followed the instructions because there is nothing in the record to suggest otherwise. *See People v. Martinez, supra.* Furthermore, there was ample evidence against defendant, and it was the jury's function to assess the credibility of the witnesses and the weight of the evidence with a view to determining whether defendant's guilt had been established beyond a reasonable doubt. *See People v. Gilbert, supra.*

In light of the significance of the other act evidence to the critical issue of identity, we cannot say that the trial court erred in its evidentiary ruling.

The judgment is affirmed.

Judge METZGER and Judge MARQUEZ concur.