**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**David C. MARTINEZ, Jr., a/k/a William P. Mondragon, Defendant– Appellant.**

No. 97CA1236.

Colorado Court of Appeals, Div. I.

Feb. 4, 1999.

As Modified on Denial of Rehearing April 8, 1999.

Certiorari Denied Oct. 18, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, David C. Lugert, Special Assistant Attorney General, Golden, Colorado, for Plaintiff–Appellee.

Todd Taylor, Greeley, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, David Charles Martinez, Jr., appeals the judgment entered on jury verdicts finding him guilty of two counts of sexual assault in the first degree and two counts of sexual assault in the second degree. We affirm.

The prosecution's evidence indicated that defendant, while a prisoner in the Adams County jail, sexually assaulted another inmate on four separate occasions.

## I.

Defendant first contends the trial court violated his Sixth Amendment right to confrontation by limiting the cross-examination of a prosecution witness concerning pending criminal charges against him, in part, to protect the witness' Fifth Amendment right against self-incrimination. We disagree.

▮ It is constitutional error for a trial court to limit excessively a defendant's cross-examination of a witness regarding the witness' credibility. This is especially true if the cross-examination concerns the witness' bias, prejudice, or motive for testifying and if the witness is charged with or threatened with criminal prosecution. *Merritt v. People*, 842 P.2d 162 (Colo.1992).

Here, when defendant's attorney began to ask the witness questions concerning charges of criminal bond jumping which might be filed against him, the trial court excused the jury and advised the witness of his rights. The witness then invoked his Fifth Amendment right against self-incrimination.

Defendant's attorney asked the trial court if he could question the witness concerning whether he had been promised anything by the prosecution or if he had received any favorable treatment. The trial court responded, "You can ask him about that. You may not ask him anything about the bond jumping, because that implicates his Fifth Amendment rights."

Defense counsel elected not to inquire into any promises made to the defendant by the prosecution or any favorable treatment he expected from the state. However, on redirect examination, the prosecutor established that the witness had, in fact, not been made any promises in exchange for his testimony.

▮ Because the trial court did not excessively limit defendant's cross-examination of the witness regarding the witness' credibility, and properly considered the witness' Fifth Amendment right against self-incrimination, we perceive no error. *See Merritt v. People, supra. See also U.S. v. Thornton*, 733 F.2d 121 (D.C.Cir.1984) (in considering potential conflict between the Sixth Amendment rights of the defendant and the Fifth Amendment rights of a witness, trial court must inquire into the basis for a witness' privilege, and may not permit witness to refuse to testify where narrowing scope of privilege will properly protect witness).

*Merritt v. People, supra*, does not, as defendant asserts, require a different result. There, two witnesses invoked their privilege against self-incrimination, and the court, at the request of the prosecutor, granted them use immunity for their testimony. The trial court then ordered that defense counsel could question them about the pending charges, but not about the grant of immunity. The supreme court reasoned that the trial court's limitation prevented the defendant from eliciting testimony that would show bias and that, thus, the defendant's right to confrontation had been violated.

In this case, there was no such grant of immunity. Furthermore, in *Merritt*, defense counsel was prohibited from questioning the witnesses about their bias, whereas here defense counsel was permitted to inquire, but elected not to do so.

## II.

Defendant next asserts the trial court abused its discretion by improperly admitting prior transaction evidence under CRE 404(b). We are not persuaded.

The admissibility of similar transaction evidence is within the discretion of the trial court. The admission of such evidence will be upheld absent an abuse of that discretion. *People v. Willner*, 879 P.2d 19 (Colo.1994).

▮ The admissibility of evidence of prior wrongful acts of a defendant is governed by CRE 404(b). Such evidence is admissible if it: 1) relates to a material fact; 2) is logically relevant; 3) has logical relevance that is independent of the intermediate inference that the defendant has a bad character and acted in conformity therewith; and 4) has probative value which is not substantially outweighed by its prejudicial effect. *People v. Spoto*, 795 P.2d 1314 (Colo.1990).

▮ Here, the prior evidence involved the testimony of a former inmate who alleged that defendant had sexually assaulted him

while they were both incarcerated at another facility. That individual testified that defendant had threatened him and his family and that defendant had forced a shampoo bottle into his rectum after the assault.

The victim testified that defendant had anally raped him three times and that, on the other occasion, defendant had forced the victim to perform oral sex. The victim further testified that, after each of the anal rapes, defendant had forced a bottle filled with hot, soapy water into the victim's rectum for the purpose of removing inculpatory evidence and avoiding a criminal charge. He also asserted that defendant had threatened him and his family if he told anyone about the assaults.

The trial court found that the evidence from the former inmate showed a common plan, scheme, design, or *modus operandi.* We agree with the trial court's assessment.

This evidence logically related to a material fact in this case. As the trial court noted, a central issue in the case was whether the victim consented. The evidence that someone else was victimized so similarly without consent tended to corroborate the victim's statements concerning the issue of consent.

Furthermore, the evidence was relevant independent of the inference that defendant had a bad character or acted in conformity therewith. The trial court opined: "In the 25 years I have been involved in criminal law, I don't know of any case that is like this, or carries those—those particular facts, and to have these two together ... shows that they [sic] are striking similarities."

Because the details of both sets of assaults were so similar, the evidence showed a common plan, scheme, or design and was, therefore, independent of the inference that defendant had a bad character.

Finally, inasmuch as the case involved a sexual assault by one inmate against another, the probative value of the evidence was not substantially outweighed by its prejudicial effect. Thus, the trial court did not abuse its discretion in admitting such evidence.

### III.

Defendant next asserts the trial court did not advise him adequately of his right to testify because it failed to explain the proper use of prior felony convictions by the trial court in relation to his adjudication as a habitual criminal. Again, we do not agree.

A defendant's waiver of the right to testify must be made voluntarily, knowingly, and intelligently. To ensure that a valid waiver has been made the trial court must advise the defendant that he or she has a right to testify, that no one can prevent the defendant from testifying, that if the defendant testifies the prosecutor will be allowed to cross-examine him or her concerning the consequences of testifying, that the defendant may be questioned about prior felony convictions, and that, if the defendant's prior convictions are disclosed to the jury, the jury may consider them only as they bear upon the defendant's credibility. The defendant must also be advised that he or she has the right not to testify, and if the defendant chooses not to testify, the jury can be instructed about that right. *People v. Curtis,* 681 P.2d 504 (Colo.1984).

Here, defendant takes issue only with the portion of the advisement in which the court stated, "This court would instruct [the jurors] that they could use those prior felony convictions only as it [sic] related to your credibility as a witness, and for no other purpose."

Defendant concedes that this advisement would have been sufficient under the former procedure in which the jury determined habitual criminality. However, he asserts, because the trial court now makes that determination, *see People v. Edwards,* 971 P.2d 1080 (Colo.App.1998), the advisement was inadequate. In effect, defendant contends the trial court should have advised him that if he testified during the case-in-chief and was later convicted, that in the subsequent habitual criminal phase of the trial, *the trial court* could use evidence of defendant's prior felony convictions only as it related to his credibility.

In our view, the advisement was proper under the amended statute, § 16–13–103(1), C.R.S.1998.

In *People v. Gray*, 920 P.2d 787 (Colo. 1996), the supreme court held that, during the case-in-chief, the trial court was not required to advise a defendant that, in the subsequent habitual criminal phase of a trial, the prosecution had a continuing obligation to prove prior felony convictions independently of a defendant's own testimony. The court reasoned that such an advisement would provide no benefit to the defendant because it would merely repeat the advisement required by *People v. Curtis, supra,* that the trial court inform the defendant that prior convictions may be considered only to impeach his or her credibility.

In determining what advisement a defendant must receive, it makes no logical difference that the trial court, rather than a jury, now decides habitual criminality.

We therefore hold that a trial court has no obligation to advise a criminal defendant of the prosecution's continuing obligation to prove a defendant's prior convictions to the trial court under the current procedure for habitual criminal adjudications. *See People v. Gray, supra.*

## IV.

Defendant finally contends that the trial court should have further inquired into a juror's hesitation and doubt as to her verdict. We are not persuaded.

Jury verdicts in criminal trials must be unanimous. Crim. P. 23(a)(8) and Crim. P. 31(a)(3); § 18–1–406(1) C.R.S.1998.

■ An appellate court reviews a trial court's consideration of a juror's hesitation or doubt as to his or her verdict under an abuse of discretion standard. *See State v. Brumback,* 109 Ohio App.3d 65, 671 N.E.2d 1064 (1996).

■ A trial court cannot accept as valid a verdict if some of the jurors have sacrificed their conscientious opinions merely for the sake of reaching an agreement. *Lowe v. People,* 175 Colo. 491, 488 P.2d 559 (1971).

Here, the trial court polled the jury and asked, "Were these and are these your verdicts?" One juror responded, "According to the law." In an effort to ensure that her verdict was unequivocal, the trial court asked the juror again and she responded, "According to the letter of the law." When the trial court asked her a final time if those were her verdicts she replied, "Yes."

■ We are satisfied that the jury verdicts in this case were unanimous. The juror's seemingly equivocal statement, when she was first polled, indicates that she made her decision exactly as she should have—according to the law. When she responded that the verdicts were indeed hers, the trial court had no reason to inquire further.

Further, we note that while a trial court may not engage in extended questioning as to why a juror says a verdict was not his or hers, *see Simpson v. Stjernholm,* 985 P.2d 31 (Colo.App.1998), such was not the case here. Rather, the trial court here did no more than engage in brief, polite questioning consistent with CRE 606(b), which otherwise precludes the admission into evidence of the deliberations and mental processes of the jurors in determining the validity of a verdict.

Finally we disagree with defendant's contention that the juror's disagreement with the answers to the special interrogatories reinforces his argument that the verdicts were not unanimous. This is so because after the juror initially stated that she did not agree with the responses to the special interrogatories, the trial court properly directed the jurors to deliberate further.

Under these circumstances, we cannot say that the trial court abused its discretion.

Judgment affirmed.

Judge METZGER and Judge CASEBOLT concur.