**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Eric L. BARNARD, Defendant–Appellant.**

No. 98CA0277.

Colorado Court of Appeals, Div. II.

Feb. 3, 2000.

Certiorari Denied Oct. 23, 2000.

Ken Salazar, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Eric L. Barnard, appeals from the judgment of conviction entered on a jury verdict of first degree murder after deliberation We affirm.

Defendant, the victim, and several friends went to meet a drug dealer. When they got out of the car to wait for the dealer, one friend told defendant the victim was a "narc" and dared defendant to shoot him. The victim reached for his pocket, and defendant then shot him.

The police investigation focused on the victim's circle of friends. Sometime after the murder, the police learned that one of the victim's friends, who was a suspect in the murder, and a young woman had attempted to cash a check written on the account of the young woman's mother. The investigator called the young woman's home and spoke to several young men. The investigator recognized the voice of one of the men as belonging to one of the murder suspects.

Police officers were sent to the home to investigate the situation. When the police arrived, several persons, including defendant, fled out the back door but were stopped by police. None of the occupants was a legal resident of the home.

Upon being stopped, the defendant gave the police a false name. He admitted that one of the cars in the driveway was his. The second check of the license plate revealed that the car was stolen. A police officer saw part of a handgun in the back of the car. The gun was subsequently determined to be the gun used to kill the victim. Defendant was held at the home for approximately an hour and a half.

Defendant was taken into custody after police learned the car was stolen. During his interrogation at the police station, defendant admitted that he had shot the victim.

Defendant's first trial ended in a mistrial when the jury deadlocked over the degree of murder. In defendant's second trial, he was convicted of first degree murder after deliberation.

I.

Defendant first contends that the trial court erred in denying his motion to suppress statements and evidence obtained during an

investigatory stop. Specifically, defendant argues that he was detained by the police without reasonable suspicion. We disagree.

■ An investigatory stop is an encounter in which a police officer conducts a limited seizure in order to question a suspect or pat him down for weapons. This type of detention is an intermediate form of governmental intrusion, falling between a consensual encounter and an arrest. *People v. Archuleta,* 980 P.2d 509 (Colo.1999). The court here determined that the defendant's contact with the police, up until the time of his arrest, constituted an investigatory stop.

■ Three conditions must exist before a person may be subjected to an investigatory stop: (1) there must be a specific and articulable basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place (reasonable suspicion); (2) the purpose of the stop must be reasonable; and (3) the scope and character of the stop must be reasonably related to its purpose. *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971).

■ The trial court concluded that all three prongs of the *Stone* test were satisfied. We agree.

Here, the record indicates that at the time defendant was stopped by the police, the officers knew that: (1) one of the murder suspects had tried to pass a questionable check; (2) when the police telephoned the address listed on that check, the young man who answered the phone said something to the effect of, "It's a cop. What [do] I do now?"; (3) another young man got on the phone whose voice the officer identified as that of one of the murder suspects; (4) no lawful resident of the home could be summoned to the phone; and (5) upon arrival of the police, several occupants, including defendant, fled out the back door.

As the trial court found, the purpose of the stop was to identify and receive an explanation from a person fleeing from a home where no lawful resident seemed to be present. And, the scope and character of the stop were reasonably related to its purpose, namely, to identify defendant and ascertain an explanation of his actions. *See Illinois v.*

*Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

Moreover, the detention of defendant here was fairly lengthy because defendant had provided a false name that could not be verified. *See, e.g., People v. Ball,* 821 P.2d 905 (Colo.App.1991) (defendant's contradictory responses justified prolonging the detention). Furthermore, since several of the occupants were suspects in the murder, the police needed to question them. In addition, the police sought to determine if defendant's car was stolen.

Accordingly, the court properly determined that the police had conducted a permissible investigatory stop.

## II.

Defendant further contends that the trial court erred in denying his motion to suppress statements made at the police station. Specifically, defendant asserts that these statements were tainted by the involuntary nature of the statements made at the home. Again, we disagree.

The court found that all of the statements that defendant made at the home, both before and after a *Miranda* advisement, were made involuntarily and should be suppressed. Defendant then argued that the statements he made after he was taken to the police station and was given a written *Miranda* warning were tainted by the involuntary nature of the earlier statements.

■ When a defendant's previous statements have been deemed involuntary, his post-*Miranda* statements may be admitted only if they were not tainted by the prior involuntary statements. *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *People v. Mendoza–Rodriguez,* 790 P.2d 810 (Colo.1990). There must have been sufficient attenuation between the involuntary statements and the statements sought to be introduced such that the taint of the illegality is removed. *People v. T.C.,* 898 P.2d 20 (Colo.1995).

■ Intervening events such as the passage of time between statements, a change in

place of interrogation, or a change in the identity of the interrogators are all factors to consider in determining whether the taint has been removed. *People v. Mendoza–Rodriguez, supra; People v. T.C., supra.*

■ Here, there was a sufficient attenuation between the two sets of statements. With record support, the court found that there were sufficient intervening events to break the causal link between the statements made at the home and those made at the police station. There was a temporal break; it took 45 minutes for defendant to be transported to the police station, and no interrogation occurred during this period. Also, the place of interrogation changed, and the identity of the interrogators changed as well.

## III.

Defendant was charged with first degree murder. In his first trial, after deliberations, the jury returned a verdict of second degree murder. When the jury was polled, one juror, in answering the court's question whether this was her verdict, stated, "Yes, under duress."

The court completed the jury poll, stated that "the Court will receive these verdicts that have been confirmed by poll," and, after conferring with counsel, cleared the courtroom except for counsel and that particular juror. The jury was not discharged. The court inquired again whether the verdict was indeed the juror's. The juror continued to state, "Yes, under duress," asserting that she thought defendant should be convicted of first degree murder but that she could not take the pressure of the other jurors.

■ Based on this, defendant asserts that the trial court improperly questioned the juror about the deliberations of the jury and her own mental processes. We disagree.

Under CRE 606(b):

Upon an inquiry into the validity of a verdict ... a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict ... or concerning his mental processes in connection therewith....

Here, before and in response to her statements, respectively, the court asked the juror two questions:

(1) I just want to ask you: we need to know that this is in fact your verdict. ... [W]e ... just need to know if this is in fact the verdict that is your verdict.

(2) The question is whether at this time, considering all the factors you have set forth, whether this is in fact your verdict.

The court did not further question the juror but simply reiterated its question whether this was in fact her verdict.

This was proper. Brief, polite questioning such as that used by the court here is consistent with CRE 606(b). *People v. Martinez,* 987 P.2d 884 (Colo.App.1999); *cf. Simpson v. Stjernholm,* 985 P.2d 31 (Colo.App.1998) (trial court's and counsel's extensive questioning of juror who answered "no" upon polling impermissible). Furthermore, it was the juror in her answers to the court's questions, and not the court, who discussed the jury's deliberations.

We also disagree with defendant's contention that because—in defendant's view—a verdict had been reached, by requiring further deliberations and ultimately declaring a mistrial, the court impermissibly set aside a final verdict.

■ Generally, in criminal cases, once a verdict is rendered and received and the court has discharged the jury, the jury may not be recalled to reconsider or amend its verdict. *Montanez v. People,* 966 P.2d 1035 (Colo.1998); *see People v. Lopez,* 867 P.2d 52 (Colo.App.1993).

However, even if we assume that the court, by its comments, formally had received the verdict, as in *Lopez,* the jury here had not been discharged at the time the juror had expressed her doubts. *See People v. Lopez, supra* (test is whether the jury has left the control of the court and whether its functions had ended); *cf. Montanez v. People, supra* (jury could not be recalled to amend verdict form when jury had been discharged and two of the jurors had already exited the courtroom).

Defendant argues, however, that when the juror said, "Yes, under duress," a unanimous, and therefore final verdict had been reached. Consequently, defendant asserts, the trial court did not have the authority to do anything but to enter the verdict. We disagree.

If there is not unanimity upon polling, a jury may be directed to retire for further deliberations or may be discharged. Crim. P. 31(d). Here, after questioning the juror, the court brought back the jury and instructed it to resume deliberations.

We review the court's consideration of a juror's doubt as to his or her verdict under an abuse of discretion standard. *People v. Martinez, supra.* We conclude that the trial court did not abuse its discretion when it determined the verdict was not unanimous.

Here, defendant's contention to the contrary, we consider the juror's statements—that her verdict was made under duress and that her true verdict would be different—at best, to be ambiguous and equivocal as to her concurrence in the verdict. Thus, under these circumstances, the court appropriately instructed the jury to resume deliberations. Indeed, it would have been improper for the trial court to have accepted a verdict as unanimous when it was apparent that the juror had sacrificed her conscientious opinion merely for the sake of reaching an agreement. *See Lowe v. People,* 175 Colo. 491, 488 P.2d 559 (1971).

### IV.

Again, concerning his first trial, defendant contends that, even if the trial court correctly sent the jury back for further deliberations, it erred in not issuing a *Lewis* instruction before declaring a mistrial. We disagree.

In *People v. Lewis,* 676 P.2d 682 (Colo.1984), the supreme court set forth a proposed instruction that a trial court may issue when a jury is deadlocked over the degree of guilt, rather than the question of guilt itself. Under *Lewis,* if a jury is so deadlocked, a court may instruct it to return a verdict on the lesser offense so long as every essential element of the lesser offense is necessarily included in the greater offense, and all jurors agree on the defendant's guilt as to either the greater or lesser offenses.

However, the giving of such instruction is not mandatory. *See People v. Lewis, supra* (trial court should consider issuing an additional instruction when jury is deadlocked).

Here, the jury had already attempted and failed to agree on a lesser charge. Moreover, upon further deliberation, the jury remained deadlocked.

Shortly after being sent back for further deliberation, the jury sent a note to the court that read:

We, the jury, cannot reach a verdict agreed upon by 12 jurors. Our apologies to the Court for our original verdict. Our current poll is 11—Guilty 2nd degree murder and 1—1st degree.

The jury then sent a second note that read in pertinent part:

We as a group questioned [the juror] as to her verdict. Her verdict was the same as all the other 11 jurors.... There was in no way any pressure or was [the juror] under any duress.

A court must take care not to issue an instruction that could be viewed by a juror as coercive. Here, the court already knew that one particular juror disagreed with the others over the question of degree and felt pressured to issue a verdict against her conscience. Thus, concern that a *Lewis* instruction, under these circumstances, could be perceived as coercive was reasonable. *See People v. Lewis, supra* (an instruction that requires a juror to surrender honestly held beliefs is antithetical to the requirement of unanimity); *see also People v. Ragland,* 747 P.2d 4 (Colo.App.1987).

Moreover, by the time the jury sent its note indicating that it was deadlocked, it had already deliberated for two days. Thus, similarly, it also was reasonable to determine that such an instruction would not be useful to the jury. *See People v. Urrutia,* 893 P.2d 1338 (Colo.App.1994).

The judgment is affirmed.

Chief Judge HUME and Judge PLANK concur.