Woodrow HANNA, Jr., Plaintiff–Appellee,

v.

STATE FARM INSURANCE COMPANY, Defendant–Appellant.

No. 05CA2469.

Colorado Court of Appeals, Div. I.

Aug. 9, 2007.

No Appearance for Plaintiff–Appellee.

George D. Browning & Associates, Stuart S. Jorgensen, Westminster, CO, for Defendant–Appellant.

Opinion by Judge MÁRQUEZ.

Raising issues concerning mistakes in a special verdict form, defendant, State Farm Insurance Company, appeals the judgment entered on the jury verdict awarding plaintiff, Woodrow Hanna, Jr., damages of $101,000. We reverse the judgment as to the amount, remand with directions to modify the judgment, and otherwise affirm.

State Farm issued plaintiff an insurance policy that included uninsured and underin-

sured motorist benefits. As a result of a motor vehicle accident, plaintiff sustained multiple injuries and filed a lawsuit against the underinsured motorist who caused the accident. With State Farm's consent, plaintiff settled with the underinsured motorist for $25,000.

Plaintiff then made a demand upon State Farm for the policy limits of $100,000 in underinsured motorist coverage in his own policy. When State Farm denied that claim, plaintiff commenced this lawsuit.

The jury returned a verdict in favor of plaintiff, and in a special verdict form indicated an award of damages. The special verdict form included the following questions, the responses, and each juror's signature:

1. State your answers to the following questions relating to the damages incurred by the Plaintiff, Woodrow Hanna, and caused by the accident of June 16, 1998.

    a. What is the total amount of damages, if any, incurred by the Plaintiff, Woodrow Hanna, for noneconomic losses or injuries, excluding any damages for physical impairment? You should answer "0" if you determine there were none.

    Answer: $ 11,500

    b. What is the total amount of damages, if any, incurred by the Plaintiff, Woodrow Hanna, for economic losses or injuries, excluding any damages for physical impairment? You should answer "0" if you determine there were none.

    Answer: $ 39,500

    c. What is the total amount of damages, if any, incurred by Plaintiff, Woodrow Hanna, for physical impairment? *noneconomic losses or injuries, excluding any damages for physical impairment or disfigurement?* [sic] You should answer "0" if you determine there were none.

    Answer: $ 50,000

(Emphasis added.) The trial court construed the verdict form to be an award of $101,000. In debriefing the jury, however, the trial court learned that the jury intended to award zero damages for physical impairment and $50,000 in total damages. Before entering judgment, the trial court spoke to counsel for both parties and informed them of the jurors' statements, but refused to reseat the jury for further proceedings. The trial court reviewed and denied posttrial motions filed by State Farm and entered judgment for $101,000 several months later.

## I. Verdict Form

State Farm contends that the special verdict form concerning the amount of damages was ambiguous and the trial court erred in interpreting the verdict to include an award of $50,000 for physical impairment. It also contends the court committed reversible error when, contrary to C.R.C.P. 51, it failed to read the special verdict form aloud prior to closing arguments. Because we conclude that the trial court erred in construing the verdict form as awarding plaintiff $101,000, we do not address its failure to read the form.

State Farm asserts on appeal that there is no dispute that the special verdict form contained an inadvertent flaw in the third subsection, which is the emphasized portion set forth above in subsection c. The record on this alleged flaw is not clear, and plaintiff has not filed a brief in response on appeal. However, the inclusion of inadvertent language is not dispositive. State Farm's C.R.C.P. 51 argument is based on the trial court's alleged failure to read the verdict forms aloud.

The record reflects that both parties accepted the verdict forms, and neither party objected to the verdict forms when they were submitted to the trial court or the jury or when the verdicts were read aloud. The jury affirmed the verdict, the trial court received the verdict, and the court discharged the jurors, telling them, "[I]t's proper for you to talk to anyone. I'm going to release you from my admonition not to talk with anyone, and it is now proper to talk with anyone, including the attorneys and parties, about this case."

The trial court met with the jurors before they dispersed and discovered that the jury had not intended to award $101,000. The court then informed the parties' attorneys

that it had come to the court's attention the verdict was "not the verdict that [the jurors] intended it to be." After entering $11,500 in subsection a and $39,500 in subsection b of the special verdict form, "[the jurors] then entered in subsection [c] what they thought should be the total that they wanted to give in damages, which was $50,000." Plaintiff's counsel and defense counsel also spoke to the jurors. The court said, "[W]e do still have the jurors contained in the jury room even though I have discharged them."

Defense counsel advised the court that the jurors had indicated that they were preparing an affidavit to be signed by all the jurors explaining that they made an error and misread the form and that they intended the physical impairment amount to be zero, and the total damages to be $50,000. Defense counsel then suggested that the jury be polled or that the court reconvene the jurors and ask them to correct the error. After some discussion, plaintiff's counsel suggested that the court let the judgment stand, amend it to $51,000, or declare a mistrial.

The record indicates the jury submitted to the trial court a handwritten note, apparently signed by all jurors, stating:

[A]fter being released by the Judge ... [we] found and agreed that we had made [an] error on the "special verdict form," resulting in an error of $50,000 in section 1. c. damages for physical impairment, noneconomic losses or injuries, excluding any damages for physical impairment or disfigurement. Our agreed intent was for an award of zero. We assumed the line was the total for all damages.

In response to this note, the trial court stated:

[T]he jurors were asked if they agreed upon a verdict. The foreperson handed the verdict form to the bailiff. The bailiff handed the verdict form to the judge.

When I reviewed the verdict forms, they were not incomplete and [not] insufficient, as far as this Court knew at that time. There was no inconsistency in the verdict form, the Court could tell.

I read the verdict clearly. I asked the foreperson, "Is this the verdict of the jury?" And they agreed. I asked the foreperson. The foreperson agreed. I asked the rest of the jury members, and the jury members agreed. I stated that the verdict was going to be received and recorded, and I discharged the jury. In between the time that I read the verdict, I received and recorded the verdict and discharged the jurors. [sic] No objection was made by any juror members to that verdict. Subsequently, the jurors were discharged, and I might add, could have left at any time or were free to stay here.

. . . .

At that point, I had no jurisdiction over the jurors, so at this point in time, I am going to order that the verdict remain in effect as it was.

■ Contrary to this ruling, we conclude the court had sufficient authority to correct the verdict under an exception to the rules restricting inquiry into the jury's intention.

■ In Colorado, while a jury may change or modify its verdict until the trial court accepts the verdict and discharges the jury, the court may not recall the jurors for this purpose once they leave the court's control. Under CRE 606(b), the supreme court has excluded juror testimony or affidavits divulging juror deliberations, thought processes, confusion, mistake, intent, or other verdict impeaching grounds. *Stewart v. Rice*, 47 P.3d 316, 322 (Colo.2002); *see* 6 David R. DeMuro, *Colorado Civil Trial Practice* § 10.15 (2d ed.2006). In addition, a trial court generally may not amend a verdict by altering the amount of damages awarded by the jury. *See* 6 DeMuro, *supra*, § 10.15. However, there appears to be no Colorado appellate decision that has addressed the particular circumstances in this case.

In other jurisdictions, courts have allowed an exception to the rule that once the trial court discharges the jury it no longer has jurisdiction to reconvene the jury. Those courts apply the exception when the jury has not yet dispersed, there is no evidence that the jury has been subjected to outside influences from the time of the initial discharge to the time of re-empanelment, and the jury remains under the de facto control of the

court. *See Masters v. State,* 344 So.2d 616, 621 (Fla.Dist.Ct.App.1977); *Sierra Foods v. Williams,* 107 Nev. 574, 816 P.2d 466, 467 (1991); *Newport Fisherman's Supply Co. v. Derecktor,* 569 A.2d 1051, 1053 (R.I.1990).

Here, we apply this exception because the record reflects that even though the jury had been discharged, it had not dispersed and was still in the court's control. And there is no indication in the record of any outside influence. Thus, this case differs significantly from the circumstances in *Stewart v. Rice, supra,* where each party obtained affidavits from five separate jurors.

Equally significant is the fact that subsection c of the verdict form contained language that should not have been included and that confused the jury. The verdict form returned by the jury was facially ambiguous, and the court's reading of the form might not have alerted the parties to the ambiguity. The transcript reflects that when the trial court read the verdict, the phrase in subsection c beginning with the words "noneconomic losses" was not read as it was written. The transcript shows that the trial court stated, "c. What is the total amount of damages, if any, incurred by the plaintiff, Woodrow Hanna, for physical impairment, noneconomic losses or injuries, excluding any damages for physical impairment or disfigurement? You should answer zero if you determine there were none. Answer: $50,000."

Finally, the jury's written statement is consistent with a reasonable reading of the verdict form that the amount entered in subsection c was intended to be a total of the previous two subsections. State Farm acknowledges on appeal that the jurors added the figures incorrectly, and that judgment should be for $51,000 rather than $50,000.

 At this date, the jury cannot be reconvened and polled, and while a mistrial is a possible alternative, we conclude that, under these circumstances, it is more appropriate simply to require the court to amend the judgment amount to $51,000 based on the record of the proceedings following the discharge of the jury.

## II. Setoffs

 Last, State Farm contends the trial court failed to properly adjust the judgment to conform to the contractual coverage limits and the applicable setoffs and payments. In view of our disposition, we conclude that the contractual cap on damages is no longer a factor. However, State Farm is entitled to credit against the $51,000 judgment the $5,000 it advanced to plaintiff before trial and the $39,800 it advanced after trial.

Thus, the judgment is reversed as to the amount, and the case is remanded to the trial court with directions to modify the amount awarded by the jury to $51,000 and to consider the issue of offsets and apply the credits specified in this opinion. The remainder of the judgment is affirmed.

Judge TAUBMAN and Judge J. JONES, concur.