**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Benito JUAREZ, Defendant–Appellant.**

**No. 07CA1350.**

Colorado Court of Appeals, Div. II.

April 28, 2011.

As Modified on Denial of Rehearing June 2, 2011.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2010.

John W. Suthers, Attorney General, Jonathan P. Fero, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge FOX.

Defendant, Benito Juarez, was convicted by a jury of vehicular homicide, driving under the influence, and careless driving. Juarez later filed a motion for a new trial on the grounds of prosecutorial misconduct and inconsistent verdicts. The district court denied the motion. On appeal, Juarez contends that: (1) the district court should have entered a directed verdict in his favor due to inconsistent jury verdicts; (2) the district court's initial polling of the jury violated CRE 606(b) by impermissibly inquiring into the jury deliberations; (3) the district court erred in failing to give the jury a modified

instruction under *Allen v. People,* 660 P.2d 896 (Colo.1983); and (4) prosecutorial misconduct in closing arguments constituted reversible error.

First, we conclude the jury's first verdicts were not unanimous and were thus invalid. In addition, we reverse the judgment and remand the case for a new trial because we conclude the district court violated CRE 606(b) while polling the jury after it announced its first set of verdicts, rendering a second set of verdicts void. Given our reversal and remand for a new trial, we need not address Juarez's contentions regarding the modified-*Allen* instruction and alleged prosecutorial misconduct.

### I. Facts and Procedural History

Late one evening, Juarez lost control of the car he was driving and hit a telephone pole. His passenger was killed in the accident. Juarez was later charged with careless driving, no proof of insurance, vehicular homicide, driving a vehicle under suspension, and driving under the influence (DUI). After Juarez pleaded not guilty to all charges, he had a jury trial.[1]

Juarez's level of intoxication at the time of the accident was contested. When Juarez's blood was drawn, just over an hour after the accident, his blood alcohol level (BAC) was .091. Both sides presented expert toxicology testimony.

The state's expert suggested that because the three blood draws on Juarez showed a decrease in BAC, Juarez was in the elimination phase (when alcohol is removed from the body) during the first draw (.091). The state's expert estimated, through extrapolation, that Juarez's blood alcohol level at the time of the accident was .114.

The defense expert supported the theory that Juarez could have consumed all the alcohol shortly before getting into the car, which resulted in a rising BAC before the blood draw, peaking at the time of the initial blood draw, and then decreasing thereafter. Juarez's expert estimated that Juarez's BAC

---

1. Before Juarez's trial began, the prosecution dismissed the charge of failure to provide proof of insurance, and Juarez pleaded guilty to driving under restraint.

could have peaked at .091, and could have been lower than .091 at the time of the accident.

The jury was instructed on the permissible inferences that it could attribute to Juarez's BAC in jury instruction 16. If the jury found that during the accident (or a reasonable time thereafter), Juarez's BAC was less than .05, it could presume he was not under the influence of alcohol. If it determined Juarez's BAC was greater than .08, the jury could infer that he was per se under the influence of alcohol while driving. However, if the jury found that Juarez's BAC was greater than .05 but less than .08, it could consider this fact in combination with other competent evidence to determine whether Juarez was under the influence of alcohol during the accident. The significance of these instructions, which factored into the jury's ultimate findings, is that DUI is an element of vehicular homicide.

At Juarez's request, the district court included, without objection, a driving while ability impaired (DWAI) jury instruction as a lesser included offense of DUI.

During deliberations, the jury submitted a number of questions, including:

Can the defendant be found guilty of vehicular homicide in the absence of being guilty of DUI or DWAI?

Is being found guilty of DUI point 080 or higher a prerequisite for being found guilty of vehicular homicide?

In response, the court provided the following special instruction 4:

Members of the jury, in answer to your questions, the prosecution is required to prove beyond a reasonable doubt that the defendant was driving under the influence, as "driving under the influence" is defined in instruction number 21. You may not find the defendant guilty of vehicular homicide or driving under the influence unless each and every element of those charges, as defined in instructions 15 and 17, respectively, has been proven beyond a reasonable doubt.

After deliberation, the jury returned verdicts finding Juarez guilty of vehicular homi-

cide, careless driving, and DWAI. The vehicular homicide verdict stated:

I.* We, the jury find defendant, BENITO JUAREZ, NOT GUILTY of VEHICULAR HOMICIDE

____[blank]_____
FOREPERSON

II.* We, the jury, find the defendant, BENITO JUAREZ, GUILTY of VEHICULAR HOMICIDE.

____[Signature ]_____
FOREPERSON

The jury returned the DUI verdict form as follows:

I.* We, the jury, find the defendant, BENITO JUAREZ, NOT GUILTY of DRIVING UNDER THE INFLUENCE and the lesser-included offense of DRIVING WHILE ABILITY IMPAIRED BY ALCOHOL.

____[blank]_____
FOREPERSON

II.* We, the jury, find the defendant, BENITO JUAREZ, GUILTY of:

**☐ DRIVING UNDER THE INFLUENCE

**☒ DRIVING WHILE ABILITY IMPAIRED BY ALCOHOL

____[Signature ]_____
FOREPERSON

The district court, on its own initiative, determined that the verdicts finding Juarez guilty of vehicular homicide and DWAI were "inconsistent." The district court reasoned that to be guilty of vehicular homicide, a defendant must be found guilty of DUI. However, the jury found Juarez guilty of DWAI, but not DUI. The underlying facts supporting the DWAI and DUI charges were the same.

The district court then polled and questioned the jury to ascertain the reason for the "inconsistent" verdicts. After the court's questioning, discussed in greater detail below, the district court provided the jury with written and oral supplemental instructions and directed the jury to resume deliberations.

When the jury retired to deliberate a second time, Juarez moved for a directed verdict

finding him not guilty of vehicular homicide based on the DWAI verdict. The district court denied the motion. Subsequently, the jury returned a second set of verdicts, finding Juarez guilty of vehicular homicide, DUI, and careless driving. The district court later merged the convictions for DUI and careless driving into the vehicular homicide conviction.

Before sentencing, Juarez filed a motion for a new trial based on the jury's inconsistent verdicts and prosecutorial misconduct during closing arguments. The district court denied the motion, and Juarez now appeals.

## II. Inconsistent Jury Verdicts

Juarez contends that the district court should have granted his motion for a directed verdict because the initial jury verdicts were inconsistent. In contrast, the People argue that the initial jury verdicts were not inconsistent and should have been accepted and entered by the district court. The People also claim that Juarez was not prejudiced by the second set of verdicts because the lesser included crimes of DUI and DWAI merged into the vehicular homicide conviction, which the jury returned in each verdict. Thus, the People ask us to give effect to the first set of verdicts.

Because the jury's initial verdicts were not unanimous, we cannot give effect to them. However, we note that the Supreme Court has long recognized that consistency in jury verdicts is not necessary. *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932). In *People v. Frye,* 898 P.2d 559 (Colo.1995), our supreme court cited approvingly cases from other jurisdictions that uphold inconsistent verdicts as long as sufficient evidence supported each of the guilty verdicts. As such, an inconsistency in the first verdicts did not necessarily render the entire verdict unenforceable.[2] However, the lack of unanimity, as discussed below, did.

## III. Jury Polling

Juarez contends that the manner in which the district court polled the jury created reversible error. The limits CRE 606(b) imposes on judicial inquiry into perceived jury confusion about the applicable law, revealed during polling, is a matter of first impression in Colorado.

Juarez argues that while polling the jury after the first set of verdicts, the district court ran afoul of CRE 606(b) when it inquired into the jury's deliberative processes and offered guidance to cure the jurors' apparent confusion regarding the applicable law. Juarez argues that the district court's actions constituted reversible error and, accordingly, the case should be remanded for a new trial. We agree.

When the jury returned its first set of verdicts, finding Juarez guilty of vehicular homicide and of DWAI, the district court and counsel for the parties agreed the verdicts were inconsistent. On its own initiative, the district court then began to poll the jurors. The following exchange took place:

THE COURT: Juror No. 1, is this—are these your verdicts and the verdicts of the other jurors?

JUROR NO. 1: Yes, Your Honor.

THE COURT: Juror No. 1, so that I understand this correctly, are you finding that on the vehicular homicide charge, that the defendant was driving under the influence at the time of the vehicular homicide?

. . . .

JUROR NO. 1: Yes, Your Honor.

THE COURT: And you also found him driving while ability impaired by alcohol.

JUROR NO. 1: Yes, Your Honor.

THE COURT: That appears to me to be inconsistent, that [for] the same act of driving in one instance, the jury found driving while ability impaired, in the other

---

2. The appropriate response to the jury's confusion expressed in its questions submitted during deliberations was for the district court to clearly instruct the jury, in writing, that the charge of vehicular homicide requires proof of DUI. That written instruction would have avoided any temptation to probe the jury's deliberations. To

the extent a portion of these verdicts were legally and logically inconsistent, the district would have to determine whether they were actually inconsistent, whether a new trial was required, or whether it could sustain a guilty verdict on some, or all of the offenses. *Frye,* 898 P.2d at 569.

driving under the influence. Was the right box checked on this verdict form?

JUROR NO. 1: It is, Your honor. Would you like an explanation?

THE COURT: Yes, please.

JUROR NO. 1: Let me know if I'm disclosing stuff in deliberation I shouldn't be. The feeling was that the time from the initial—from the accident to the time the blood-alcohol was taken was a sufficiently lengthy time that the ability was impaired but per instruction 16, the second definition that talked about the point 05 and point 08, that we could use other factors for consideration of being under the influence.

THE COURT: Okay. And for your guidance, you could have done that too for driving under the influence of alcohol charge.

JUROR NO. 1: Yes, Your Honor.

THE COURT: And did the jurors unanimously find that each and every element for vehicular homicide, including that the defendant was driving under the influence as that was defined by the instructions, had been proven beyond a reasonable doubt?

JUROR NO. 1: Yes, Your Honor.

The district court then polled jurors 2 through 5, asking them if the verdicts were theirs, and if they found the state had proved all elements of vehicular homicide, including the DUI, beyond a reasonable doubt. Jurors 2 through 5 answered in the affirmative.

Juror 6 first answered that the verdicts were his, but when asked if he found beyond a reasonable doubt that all elements of vehicular homicide were proved, including DUI, Juror 6 responded:

JUROR 6: Well, Your Honor, in my understanding of it, and my determination was that [defendant] was driving while impaired when [the accident] happened. I'm not sure if there's—if that's a legal distinction or not, but that was what I intended to [be] my decision. And I'm not sure if that—what the ramification is of that. That was not clear in the distinction between the two.

So if there is a definite distinction between driving while impaired as compared to driving under the influence—

THE COURT: Yes, there is. Under the instructions I gave you, there is a distinction under the law.

JUROR NO. 6: So my understanding is what I was—what I found [defendant] guilty of was that he was driving while he was impaired.

THE COURT: And are you saying that you did not find that the People have proven beyond a reasonable doubt that the defendant was driving under the influence of alcohol or drugs, or both alcohol and drugs, at the time of the offense as that definition was defined in the law that I provided to you?

JUROR 6: I would have to say that's a true statement, sir.

THE COURT: So you do not agree with this verdict?

JUROR 6: I—what I thought we agreed upon was that this person was driving while impaired and that was the cause of the vehicle homicide. Does that make sense?

THE COURT: So just so that we use the same terminology, driving while impaired has a distinct definition of the law—under the law, and driving while ability impaired as defined in instruction 21, means having consumed a sufficient quantity of alcohol that affects him to the slightest degree so that he's less able, either mentally or physically, or both, to exercise due care and judgment in the operation of a vehicle with safety to himself and the public.

Driving under the influence means driving a vehicle when a person has consumed alcohol or one or more drugs ... affects such person to a degree that such person is substantially incapable either mentally or physically ... of exercising clear judgment, sufficient physical control, or due care in the safe operation of a vehicle.

JUROR 6: I believe I understand the difference, Your Honor.

THE COURT: Okay.

JUROR NO. 6: However, I was—I thought that we had decided that a person

who is driving while impaired, that would apply to this charge. I guess I was a little bit confused.

. . . .

JUROR 6: I would have to agree with your prior statement that there seems to be a conflict here. . . .

THE COURT: That's why I'm asking the questions that I am . . . to make sure that I understand what the jury's verdict is in this instance.

JUROR 6: You're asking me, then—

THE COURT: Well, I'm asking if there has been a unanimous verdict in your mind, Juror No. 6 or if the jury should continue with deliberations.

JUROR 6: I think we need to continue with deliberations.

THE COURT: Juror No. 1, would you agree with that?

JUROR NO. 1: Yes, based on that statement, Your Honor.

The district court then provided the jury a new set of verdict forms and told the jury, despite the earlier exchange, that the court was "not saying that [the jury's] verdict should change in any way."

Shortly thereafter, Juror 7 explained the jury's reasoning to the district court:

> The reason we were doing the verdicts as we were is we got the impression driving under the influence had two different meanings. If you read the definitions and the instructions it makes it sound like there's no limit of alcohol mentioned in there. That's where we were confused.

In response, the district court and parties agreed that the jury needed a supplemental instruction. The district court gave a lengthy and detailed verbal instruction regarding the elements of DUI, DWAI, and vehicular homicide, and the permissible inferences of intoxication levels.

The jury then began its second deliberation and convicted Juarez of DUI instead of DWAI. The jury also found Juarez guilty of vehicular homicide and careless driving.

## A. Standard of Review

■ We generally review the manner a district court polls a jury for abuse of discretion. *People v. Barnard,* 12 P.3d 290, 295 (Colo.App.2000); *People v. Martinez,* 987 P.2d 884, 888 (Colo.App.1999).

Because Juarez raised no contemporaneous objection to the district court's juror polling, we review his CRE 606(b) claims for plain error. *See People v. Phillips,* 91 P.3d 476, 479–80 (Colo.App.2004) (where no contemporaneous objection is made to an asserted error occurring during the polling of the jury, our review is limited to whether the error rises to the level of ordinary plain error) (citing *People v. Auman,* 67 P.3d 741, 767 (Colo.App.2002), *rev'd on other grounds,* 109 P.3d 647 (Colo.2005)).

■ Plain error is both obvious and substantial. *People v. Cook,* 197 P.3d 269, 275 (Colo.App.2008); *People v. Miller,* 113 P.3d 743, 750 (Colo.2005); *see* Crim. P. 52(b) (plain errors affecting substantial rights of parties may be recognized on review even when not brought to a trial court's attention). To meet the obviousness requirement of plain error, the error must be so clear that a district judge should be able to avoid it without the benefit of an objection. *Cook,* 197 P.3d at 275.

After reviewing the entire record, we must determine if we can say "with fair assurance the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of" the second set of verdicts. *Phillips,* 91 P.3d at 479. We conclude that it did.

## B. Secrecy of Jury Deliberations

The secrecy of jury deliberations is fundamental to the American justice system. *Garcia v. People,* 997 P.2d 1, 7 (Colo.2000); *People v. Kriho,* 996 P.2d 158, 167 (Colo.App. 1999). To ensure the privacy of jury deliberations, our supreme court adopted CRE 606(b), which states:

> Upon an inquiry into the validity of a verdict . . . a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any

other juror's mind or emotions as influencing him to assent to or dissent from the verdict ... or concerning his mental processes in connection therewith.

The rule has three limited exceptions, none of which applies here.[3] Apart from these exceptions, "[a] juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying." CRE 606(b).

■ This rule seeks to (1) promote finality of verdicts; (2) shield verdicts from impeachment; and (3) protect jurors from harassment and coercion. *Stewart v. Rice*, 47 P.3d 316, 322 (Colo.2002); *Reifschneider v. City & County of Denver*, 917 P.2d 315, 318 (Colo. App.1995).

■ CRE 606(b) presumes that jurors will follow the court's instructions and execute their duty appropriately. To this end, the mental processes of a deliberating jury regarding the merits of a case are not open to examination and second-guessing by the court, the parties, or the public. *Garcia*, 997 P.2d at 7; *see United States v. Thomas*, 116 F.3d 606, 620 (2d Cir.1997).

### C. The Limits in Jury Polling

■ When a verdict is returned, but before it is recorded, either party may move to poll the jury or the district court may do it sua sponte. Crim. P. 31(d). If polling the jury reveals that there is not a unanimous concurrence, the district court may dismiss the jury or direct the jury to deliberate further, resubmitting the verdict to the jury, and if necessary, providing supplemental instructions. Crim. P. 31; *Neil v. Espinoza*, 747 P.2d 1257, 1260 (Colo.1987); *Simpson v. Stjernholm*, 985 P.2d 31, 34 (Colo.App.1998); *Reifschneider*, 917 P.2d at 318. While a jury may amend or alter its verdict until the district court accepts it, *Martinez*, 987 P.2d at 888; *Phillips*, 91 P.3d at 479, to be accept-

ed, the verdict must be unanimous. § 16–10–108, C.R.S.2010; Crim. P. 23(a)(8) & 31(a)(3).

■ While a district court has discretion in how it conducts a jury poll, it may not engage in extensive questioning as to why a juror rejects the verdict. *Phillips*, 91 P.3d at 479. There is no "rote formula a district court must follow when faced with a plainly problematic verdict." *United States v. Poole*, 545 F.3d 916, 918 (10th Cir.2008) (addressing jury's return of redundant verdicts). There is often more than one way for the district court to deal with ambiguous verdicts. *See id.*[4]

■ In *Barnard*, 12 P.3d at 294, and *Martinez*, 987 P.2d at 888, divisions of this court held that brief, polite questioning of the jury during polling complied with CRE 606(b). *See Bruce v. Chestnut Farms–Chevy Chase Dairy*, 126 F.2d 224, 225 (D.C.Cir. 1942) ("It is both unwise and undesirable that the court should enter into an argument with the juror or require an explanation of his change of position."); *United States v. Edwards*, 469 F.2d 1362, 1367 (5th Cir.1972); *see also United States v. Brooks*, 420 F.2d 1350, 1354 (D.C.Cir.1969) (trial court's inquiry into juror's equivocal answer was essentially neutral rather than calculated to affect the juror's judgment and was therefore acceptable). The district court must also endeavor to keep its limited questions, if any, neutral. *Id.; accord United States v. Morris*, 612 F.2d 483, 489–91 (10th Cir.1979); *State v. Tennant*, 173 W.Va. 627, 630, 319 S.E.2d 395, 398 (1984).

■ CRE 606(b) protects the integrity of the jury from coercion, potential harassment, or outside pressure, while the jury deliberates and during polling. *People v. Rivers*, 70 P.3d 531, 536 (Colo.App.2002). As such, extensive or coercive questioning of the jurors regarding their deliberative process is improper even if the district court perceives jury confusion regarding the applicable law.

---

3. As exceptions to CRE 606(b), a juror may testify as to whether: (1) extraneous prejudicial information was improperly brought to the jurors' attention; (2) any outside influence was improperly brought to bear upon any juror; or (3) there was a mistake in entering the verdict onto the verdict form.

4. *Simpson*, 985 P.2d at 34 (recognizing that when interpreting a state rule of procedure, appellate court may look to similar federal rule and related case law for guidance).

See People v. Munsey, 232 P.3d 113, 119 (Colo.App.2009) (The trial "court may not give an instruction that expressly or impliedly coerces the jury to reach a verdict regardless of whether that would require a juror to 'surrender his conscientious convictions to secure an agreement.'") (quoting Lowe v. People, 175 Colo. 491, 494–95, 488 P.2d 559, 561–62 (1971)).

Our supreme court has cited with approval cases from other jurisdictions that prohibit inquiry into whether the jury was confused, holding that the issue of whether jurors were confused about the law is an intrinsic part of the jury's deliberative process. Stewart, 47 P.3d at 322; Chalmers v. City of Chicago, 88 Ill.2d 532, 539–40, 59 Ill.Dec. 76, 431 N.E.2d 361, 365 (1982); McDaniel v. Kleiss, 198 W.Va. 282, 287, 480 S.E.2d 170, 175 (1996). If none of CRE 606(b)'s exceptions is met, the district court may not consider juror affidavits or testimony regarding a juror's alleged confusion, mistake, or misinterpretation of the law. CRE 606(b); see Stewart, 47 P.3d at 323 (once the jury verdict is accepted, the district court may not recall the jurors to change or amend their verdicts after they have been discharged); Rivers, 70 P.3d at 536; Reifschneider, 917 P.2d at 318; see also Neil, 747 P.2d at 1261; cf. Hanna v. State Farm Ins. Co., 169 P.3d 267, 269 (Colo.App. 2007) (trial court could reconvene civil jury that had been discharged, but had not dispersed after receiving a facially ambiguous verdict); Barnard, 12 P.3d at 295 (CRE 606(b) is not violated if it is the juror, and not the court, who initiates the discussion of the jury's deliberations). That is true even if the jurors' deliberations are revealed as a result of questions by the district court. Here, the jury shared its mental processes only after the district court continued to probe.

## D. Polling of Juarez's Jury

█ We conclude the manner in which the district court polled Juarez's jury regarding the perceived inconsistent verdicts exceeded the bounds of CRE 606(b). As the Stewart court recognized, "[i]t would have been hard to paint with a broader brush, and in terms of subject, Rule 606(b)'s exclusionary principle reaches everything which relates to the jury's deliberations, unless one of the exceptions applies." 47 P.3d at 321 (quoting Christopher B. Mueller, Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b), 57 Neb. L.Rev. 920, 935 (1978)). Here, none of the rule's exceptions applied; therefore, the manner of the district court's questioning of the jury in this instance was obviously erroneous as it resulted in impermissible jury testimony that revealed the mental processes of the jurors. Moreover, the court itself may have influenced the jury's second set of verdicts.

By engaging in a detailed and lengthy conversation with the jury regarding its deliberative confusion, the district court violated CRE 606(b). Stewart, 47 P.3d at 325 (an attempt to make jurors witnesses outside of CRE 606(b)'s exceptions constitutes an abuse of the rule); Garcia, 997 P.2d at 7; see Thomas, 116 F.3d at 623.

The district court had several inappropriate exchanges with the jury during polling. First, the district court told Juror 1 that the verdict "appears to [the court] to be inconsistent," and when Juror 1 asked if the district court would like an explanation, the court responded in the affirmative. The district court then allowed the juror to impermissibly testify about the thought processes of the jury. Next, the district court pointed out to Juror 1 that the permissive inference the jury apparently relied upon to find Juarez guilty of vehicular homicide could also have been applied to the DUI charge, implying that the jury should have done just that.

Later, Juror 6, following the example of Juror 1, relayed how his understanding of the law that led to his vote. The district court corrected Juror 6's misunderstanding of the law and asked if Juror 6 still agreed with the verdict given the court's clarification, or if deliberations should continue. See, e.g., Munsey, 232 P.3d at 119; Allen, 660 P.2d at 898 (a "time-fuse" instruction that essentially tells the jury that it must reach a verdict within a certain time frame or have a mistrial, may have a coercive effect and is improper). As a result, Juror 6 had no choice but to opt for further deliberations.

Finally, the district court's effect upon the jury is underscored by Juror 7's apparent need to explain the original verdicts. The district court set the stage for Juror 6 and Juror 7 to explain their mental processes.

Having determined that the district court erred, we next address whether that error was obvious and substantial. *Cook,* 197 P.3d at 275. CRE 606(b)'s requirement that no one, including the district court, may probe the jury's deliberative process, absent limited exceptions, is clear and obvious. *See Stewart,* 47 P.3d at 321. In fact, where a duty to prevent disregard of the law the conflicts with the priority of keeping jury deliberations secret, the court is compelled to err in favor of the lesser of two evils by protecting jury secrecy at the expense of allowing irresponsible juror activity. *Garcia,* 997 P.2d at 7. The district court's questioning tainted the second set of verdicts and revealed that the first set was not unanimous. It is well established that the right to a unanimous jury verdict is substantial. *See also People v. Hardin,* 199 Colo. 229, 234, 607 P.2d 1291, 1294 (1980) (an appellate court will review defects affecting substantial rights for plain errors, even though error raised for the first time on appeal).

Given the district court's extensive and inappropriate inquiry into the jury's deliberative processes, and responsive commentary thereto, the reliability of the second set of verdicts is called into serious doubt. Merely comparing the first set of verdicts with the second set shows the coercive effect, even if unintentional, of the district court's intrusion into the jury's deliberative processes. The district court's belated offering that the jury's verdicts did not necessarily need to change did not, in our view, cure the error. While the People argue that Juarez was not prejudiced by the second set of verdicts because the DUI merged into the vehicular homicide as a lesser included offense, we conclude that the jurors' deliberative processes were so compromised that their second set of verdicts is unreliable. Accordingly, the fundamental fairness of the trial itself is called into question and the error requires that we reverse the judgment of conviction and remand the case for a new trial.

While polling the jury, it became evident that the jury was no longer unanimous on the first verdicts. Thus, the first verdicts were unenforceable. On rehearing, the People agree that the district court's insistence that Juror 6 testify about his confusion about the law violated CRE 606(b), but argue that we are not permitted to rely on the same juror's testimony to conclude that the verdict was not unanimous. CRE 606(b), however, must be read in conjunction with Crim. P. 31(d), which allows the jury to be polled. The portion of the trial court's inquiry directed at polling the jury to determine if the verdict was unanimous was not improper. What was improper was the trial court's continued probing, which then resulted in the jurors disclosing their deliberations. The jurors were always free, however, to disclose if their verdict was not unanimous. They were not free to discuss why it was not unanimous or who rendered the verdict not unanimous. Because the district court violated CRE 606(b) while polling the jury after the first verdicts, the second set of verdicts was rendered unenforceable. Accordingly, we reverse the judgment and remand the case for a new trial. Because of our resolution of this case, we decline to address Juarez's claims regarding prosecutorial misconduct and the district court's failure to give the jury a modified instruction under *Allen,* 660 P.2d 896.

The judgment is reversed, and the case is remanded for a new trial.

Judge LOEB and Judge PLANK[*], concur.

---

[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2010.