NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RAYMOND EDWIN FREENY, *Appellant.*

No. 1 CA-CR 20-0167
FILED 7-15-2021

Appeal from the Superior Court in Maricopa County
No.  CR2018-001790-001
The Honorable Ronee Korbin Steiner, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Maria Elena Cruz joined.

_____

**HOWE**, Judge:

¶1 Raymond Edwin Freeny appeals his conviction and sentence for aggravated assault. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 A.W. was riding the light rail when he noticed Freeny behaving erratically and "aggressive[ly]" towards other passengers. A.W. informed a security guard of Freeny's behavior, and realizing he needed to purchase a light rail ticket, he also asked the guard how to do so. The guard removed Freeny from the train at the next stop.

¶3 A.W. got off the train at the next stop thereafter. He purchased a ticket on the platform, and while waiting to re-board the next train, saw Freeny walking towards him. As Freeny approached A.W., Freeney raised a metal tent spike above his head and threatened to gouge out A.W.'s eyes. Just then, a train arrived. A.W. pushed Freeny aside, entered the train, and informed a security guard of Freeny's threat. The security guard called 911.

¶4 An officer responded to the call, which the 911 dispatcher labeled as an armed robbery. The officer spoke with A.W., who explained how Freeny had threatened him. After he finished interviewing A.W., the officer changed the dispatch call label to aggravated assault instead of armed robbery. Officers eventually located Freeny nearby, and A.W. positively identified Freeny as the individual who had threatened him with the tent spike.

¶5 The State charged Freeny with one count of aggravated assault, a class 3 dangerous felony. Freeny filed numerous evidentiary requests before trial. In one, Freeny requested a copy of the 911 call, which he intended to use as impeachment evidence because the victim allegedly reported the incident as an armed robbery. A Phoenix Police Department letter stated that the 911 call recording was no longer available since 911 calls are only retained for 190 days and then they are destroyed. The police department did provide the dispatch report.

¶6          Freeny also raised the issue of his inability to view some of the surveillance videos of the light rail that the State disclosed. Freeny further asserted that the State failed to disclose certain video clips described in a supplemental report. Some of the videos that the State initially received from the third-party vendors in control of the footage, however, were for the wrong date and did not show the incident. When the State tried to get the correct footage, it learned that the tapes had already been deleted or were overwritten by the third-party vendors.

¶7          Because of these issues, Freeny moved both to compel the State provide the footage and for sanctions against the State. The trial court denied Freeny's motions, finding that "all the discovery concerned [in the motions had] been made available" and disclosed to Freeny. Although Freeny still had some issues with getting some of the videos to play, he was able to view the videos that were introduced at trial before the open of evidence.

¶8          Eight days before trial, Freeny requested a 30-day continuance to allow his newly appointed investigator time to obtain discovery from Freeny's former investigator. Before the superior court ruled, Freeny's new investigator was able to "go through [with Freeny] all of the video clips that were provided . . . from the County Attorney's Office[.]" After considering the evidence at a hearing two days before the trial start date, the superior court granted Freeny a one-week continuance.

¶9          Freeny represented himself at trial and requested an instruction on the lesser-included offense of disorderly conduct that stated "disorderly conduct by recklessly handling a dangerous instrument is a lesser-included offense of aggravated assault with a dangerous instrument." The trial court granted the request and included a definition of recklessly that stated "'[r]ecklessly' means that a defendant is aware of and consciously disregards a substantial and unjustifiable risk that conduct will result in handling or displaying the dangerous weapon or dangerous instrument." The instruction also included the statement that the lesser included is only to be considered if the jury could not find that Freeny had committed aggravated assault.

¶10          Freeny also requested an adverse inference instruction for the destroyed 911 recording and light rail surveillance footage, arguing that he had lost impeachment evidence that impaired his defense. The court denied the request.

¶11          The jury found Freeny guilty as charged. The jury also found as aggravating circumstances that the offense involved the use of a

dangerous instrument, and caused physical, emotional, or financial harm to the victim. During the sentencing phase, the court found three aggravating circumstances: Freeny's use of a dangerous instrument; A.W.'s physical, emotional, or financial harm; and Freeny's two historical prior felony convictions. The court weighed the aggravating factors against the mitigating factors—Freeny's traumatic upbringing, long-term substance abuse, and family support—and imposed a presumptive prison term of 11.25 years. Freeny timely appealed.

## DISCUSSION

¶12　　　　Freeny argues that the superior court erred in denying Freeny's motion for discovery sanctions against the State and in ordering a continuance for a week instead of 30 days. He also argues that the court gave an improper lesser-included offense instruction and erred in denying his request for an adverse inference instruction. In his final argument, he claims that the court erred in using the "dangerous instrument" as an aggravating factor at sentencing. Freeny's arguments fail, however, because they either lack merit or he has not shown that any error has prejudiced him.

### I.　　The State's Purported Discovery Violations

¶13　　　　Freeny asserts that the superior court abused its discretion in denying his motion for sanctions for the State's purported discovery violations. He argues that the State violated Ariz. R. Crim. P. 15 by disclosing light rail surveillance videos in a format that he could not use to view the video, and he was therefore entitled to a "continuance." We review the imposition or denial of sanctions for a violation of a discovery rule for an abuse of discretion. *See State v. Martinez-Villareal*, 145 Ariz. 441, 448 (1985).

¶14　　　　The technical issues that initially inhibited Freeny's ability to view the videos were mostly resolved before trial. Whatever technical issues remained cannot be attributed to the State. The record reveals that the State made multiple disclosures of the videos in various formats to accommodate Freeny's disclosure requests. Freeny cites no authority that recognizes a Rule 15 violation under these circumstances. The court did not err in denying Freeny's request for sanctions.

### II.　　Motion to Continue Trial

¶15　　　　Freeny argues that the court erred by failing to continue trial for 30 days so that his new investigator could review all the material. The superior court must grant a continuance "only on a showing that

4

extraordinary circumstances exist and that delay is indispensable to the interests of justice." Ariz. R. Crim. P. 8.5(b). We review the denial of a requested continuance for an abuse of discretion and resulting prejudice. *State v. Forde*, 233 Ariz. 543, 555 ¶ 18 (2014).

**¶16**      The court did not error in continuing the trial for a week instead of 30 days. The record indicates that before the superior court granted the seven-day continuance, Freeny's new investigator was able to "go through [with Freeny] all of the video clips that were provided . . . from the County Attorney's Office[.]" Given the stated purpose of Freeny's motion to continue—a transfer of discovery from his former investigator to the current one—the trial court did not abuse its discretion in continuing the trial for a week instead of 30 days as Freeny requested.

**¶17**      Freeny nonetheless argues that the additional delay was necessary to resolve issues related to his inability to view light rail surveillance video that the State disclosed. He does not sufficiently explain, however, what "extraordinary circumstances" existed to necessitate an additional 23 days of delay and he cites no authority that compels a different conclusion. Moreover, he does not specify the prejudice resulting from the superior court's decision. He only surmises that his investigator "may have been able to" review material and interview a witness, which in turn, "may have" led to a "different defense that could have resulted in a different verdict." His inability to show prejudice further supports that no error occurred.

### III.    Jury Instruction on Lesser-Included Offense

**¶18**      Freeny argues that the substance of the disorderly conduct instruction was improper. He claims that the trial court erred in "formatting" the elements of the offense and contends that the instruction incorrectly defined "recklessly." Because he did not object to the instruction, he bears the burden of establishing fundamental error, which requires him to prove that error occurred and that the error either prejudiced him, or "was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 140, 142 ¶¶ 12, 21 (2018).

**¶19**      During the reading of the jury instructions, the trial court instructed the jurors to consider the disorderly conduct offense only if they either found Freeny not guilty of aggravated assault or could not agree on a verdict for aggravated assault. We presume the jury followed the court's directive. *State v. Newell*, 212 Ariz. 389, 403 ¶ 68 (2006). Thus, by finding him guilty of aggravated assault, the jury did not confront whatever error—if

any—occurred in the disorderly conduct instruction. He therefore fails to establish either prejudice or error so egregious that it resulted in an unfair trial. *See State v. Turner*, 2 CA-CR 2019-0276, 2021 WL 1782541, at *5 ¶ 24 (Ariz. App. May 5, 2021) (in first-degree murder trial, concluding purported error in placing burden of proof on defendant in manslaughter instruction was harmless because trial court instructed jurors to consider the lesser offense only if they found defendant not guilty of first-degree murder or could not agree on a verdict for first-degree murder).

### IV. Adverse Inference Instruction

**¶20** Freeny argues that he was entitled to an adverse-inference instruction under *State v. Willits*, 96 Ariz. 184 (1964), because the State did not preserve the light rail surveillance video or the recording of the 911 call. *See State v. Fulminante*, 193 Ariz. 485, 503 ¶ 62 (1999) ("When police negligently fail to preserve potentially exculpatory evidence, [a *Willits* instruction] permits the jury to infer that the evidence would have been exculpatory."). To obtain a *Willits* instruction, a defendant must prove that the State failed to preserve evidence that is material and accessible and that might tend to exonerate the defendant. *State v. Murray*, 184 Ariz. 9, 33 (1995). We review the superior court's refusal to give a *Willits* instruction for an abuse of discretion. *Id.*

**¶21** The State did not negligently fail to preserve the light rail surveillance video. The State was not responsible for whatever technical issues continued to hinder Freeny's ability to view the videos. Regarding video evidence that the State was unable to obtain, Freeny concedes that a third-party contractor who maintains the light rail surveillance video initially provided the State with video depicting a date different from the date of the offense, and that by the time he was indicted in this case, the light rail video system had recorded over the video from the date of the offense. *Cf. State v. Perez*, 141 Ariz. 459, 463-64 (1984) (failure of police to request videotape "that is obviously material" entitles defendant to a *Willits* instruction if defendant can show prejudice).

**¶22** As for the destroyed recording of the 911 call, Freeny argues the "call notes" included an incorrect reference to an armed robbery, which "potentially . . . could have been used to impeach A.W." Freeny's speculation about the recording's exonerative tendency is insufficient. *See State v. Glissendorf*, 235 Ariz. 147, 150 ¶ 9 (2014) ("To show that evidence had a 'tendency to exonerate,' the defendant must do more than simply speculate about how the evidence might have been helpful."). The speculative nature of Freeny's argument is amplified by the fact that a

security guard, not A.W., called 911. The superior court did not abuse its discretion by denying Freeny's request for a *Willits* instruction.

## V.    "Dangerous Instrument"

**¶23**        Freeny also argues that the trial court erred by relying on his use of a dangerous instrument as an aggravating circumstance for sentencing purposes because that conduct is also an essential element of aggravated assault as charged in this case. Recognizing that he received the presumptive sentence under the repetitive offender statutes, he contends that he should be resentenced because, without the improper aggravator, the trial court "could have found that [the] substantial mitigation warranted a mitigated sentence[.]" He did not object in superior court to the State alleging use of a dangerous instrument as an aggravating factor. We therefore review for fundamental error. *Escalante*, 245 Ariz. at 140 ¶ 12.

**¶24**        We agree that use of a dangerous instrument was an improper aggravator in this case. *See* Ariz. Rev. Stat. (A.R.S.) §§ 13–701(D)(2) (threatened use of a dangerous instrument during commission of a crime may be used as an aggravating factor "except if this circumstance is an essential element of the offense of conviction"); –1204(A)(2) (a person commits aggravated assault by assaulting another with a dangerous instrument). But Freeny's argument ultimately fails because he does not demonstrate that the trial court would have imposed a mitigated sentence absent the improper aggravator. *See id.* at 142 ¶ 21 (under fundamental error review, defendant has burden to establish prejudice or egregious error resulting in unfair trial).

**¶25**        In addition to considering Freeny's use of a dangerous weapon, the court considered two proper aggravating factors, namely A.W.'s physical, emotional, or financial harm, and Freeny's two historical prior felony convictions. *See, e.g., State v. Bonfiglio*, 228 Ariz. 349, 354 ¶ 21 (App. 2011) ("A trial court may use the same convictions to enhance or increase the sentencing range and to aggravate a defendant's sentence within the enhanced range."). The court then weighed those factors against the mitigating factors of Freeny's traumatic upbringing, long-term substance abuse, and family support. Freeny does not identify anything in the record that affirmatively shows the court would have imposed a mitigated sentence had it not considered the improper aggravator. Instead, he merely speculates that the court "could have" done so. We will not presume prejudice where none appears affirmatively in the record. *State v. Trostle*, 191 Ariz. 4, 13–14 (1997); *see State v. Munninger,* 213 Ariz. 393, 397 ¶ 14 (App. 2016) (holding appellant's speculation—that trial court would

impose specific sentence had improper aggravating factor not been considered—does not establish prejudice).

**CONCLUSION**

¶26        Freeny's conviction and sentence are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA